JONATHAN T. ABBETT *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

### June 14, 1883.

**Negligence—When a Question for Jury.**—The question of negligence is ordinarily one for the jury. It is always so when the evidence is conflicting, or when the facts are undisputed, but different minds might reasonably draw different conclusions from them. Hence, when the question of negligence arises upon a conceded state of facts, if reasonable men might arrive at different conclusions, it must be submitted to the jury.

**Same—When Question for Court.**—But when the facts are undisputed or conclusively proved, and there is no reasonable chance for drawing different conclusions from them, the question of negligence becomes one of law for the court. And even if there be controversy in the evidence as to some facts, yet if those that are uncontroverted clearly and indisputably establish negligence, it is still a question of law for the court.

**Same—Crossing Railway Track.**—A traveller on a highway, when about to pass over a railway crossing, is bound to look for approaching trains before crossing. Neglect to do so is negligence, unless obstructions prevent a view of the track, or unless some act of the company or its agents has put him off his guard, and induced him to believe that he can cross in safety without using this precaution.

**Contributory Negligence Shown.**—Evidence in this case considered, and
*held* sufficient to warrant the court in holding, as a matter of law, that
plaintiff's servant, who had charge of the property destroyed, was guilty
of contributory negligence which conduced to the injury.

Appeal by plaintiff from an order of the district court for Hennepin
county, *Lochren, J.,* presiding, refusing a new trial, after verdict for
defendant under the direction of the court.

*Merrick & Merrick,* for appellant.

*W. H. Norris,* for respondent.

MITCHELL, J.    This was an action for damages for injuries to
plaintiff's horse and wagon, alleged to have been caused by the neg-
ligence of defendant.    At the time of the accident the horse and
wagon were in charge of one Barnum, the servant of plaintiff.    When
the evidence closed, the court directed a verdict for defendant, on the
ground that it appeared that Barnum was guilty of negligence which
contributed to the injury.    The correctness of this direction is the
only question presented by the case.

Negligence is ordinarily a question for the jury.    It is always so
where the evidence on material points is conflicting, or where, the
facts being undisputed, different minds might reasonably draw differ-
ent conclusions from them.    Negligence cannot be conclusively es-
tablished, as a matter of law, upon a state of facts on which fair-
minded men of ordinary intelligence may differ as to the inferences
to be drawn from it; and when the question of negligence arises upon
even a conceded state of facts from which reasonable men might arrive
at different conclusions, it must be submitted to the jury, and if the
inferences to be drawn from the evidence are not certain or incontro-
vertible, the question of negligence cannot be passed upon by the
court.    The *evidential* facts may be all admitted, and yet the question
of negligence not be a question for the court; for in such case this is
the *main fact,* the existence or non-existence of which is to be inferred
from the other facts.    But where the facts are undisputed or conclu-
sively proved, and there is no reasonable chance for drawing different
conclusions from them, then the question, as in any other case, be-
comes one of law for the court.    And even if there be controversy in
the evidence as to some facts, yet if those that are uncontroverted

clearly and indisputably establish negligence, it is still a question of law for the court. While it is undoubtedly true that a court might, in its discretion, set aside a verdict as against the weight of evidence, and submit the question to another jury, in a case where it would have no right to take the question entirely away from the jury, yet we apprehend that whenever it would be the bounden duty of the court to set aside a verdict because there is no evidence to sustain it, or because it is against the evidence, it would be no error to direct a verdict or grant a nonsuit.

All that remains is to apply these general rules to the facts of this case. After a careful examination of the evidence, we think the following facts are conceded or conclusively proved: Defendant's road in the city of Minneapolis, running north-west and south-east, crosses Franklin avenue, which runs east and west, at its intersection with Cedar avenue, which runs north and south. This portion of the road is between the depot and the city yard, and the lower or freight yard in south Minneapolis, and is used in the almost constant handling of cars in the usual course of business between the two yards, as well as for the passage of regular trains, being traversed by at least from 40 to 50 trains and engines per day, besides the regular trains. These irregular trains do not run on schedule time. At this crossing at which the accident occurred, the railroad consists of two parallel and straight main tracks, the eastern one of which is used for outgoing and the western one for ingoing trains. At or near this crossing there are also some switch or side-tracks, coming into the main tracks. There is also a sign-board containing the words "Look out for the cars." The company also kept a flagman at the crossing.

Barnum, the driver of the horse and wagon, had been employed at plaintiff's store, on the corner of Franklin and Cedar avenues, for about a month, clerking and driving this delivery wagon, and hence was necessarily familiar with the tracks and the passage of trains. On the morning in question, he approached this crossing from the east, by Franklin avenue, driving this wagon. Galliger, the flagman, signalled him of an approaching train, and then passed over towards the west side of the railroad tracks, to signal teams approaching from that side. Almost immediately the Chicago train from the

south came along, running on the west main track, and consisting of 10 or 11 coaches. This train, in passing, intervened between the flagman and Barnum, and between the flagman and the east main track; this east main track being on the same side with Barnum. The passing Chicago train would necessarily intercept from the flagman's view the approach of trains from Minneapolis on the east main track. There was nothing, however, to prevent Barnum, had he looked, from seeing an approaching train on this track before driving upon it. There is some slight conflict as to whether he could have seen up this track beyond the crossing when at a distance of 30 feet from the track; but that he could have done so before driving upon the railroad appears conclusively from the diagrams and measurements, and the other evidence in the case. Whether Barnum saw the signal of the flagman or not does not conclusively appear, but it does appear that he halted until the Chicago train had passed, and then, without waiting for any signal from the flagman that it was safe to cross, and knowing that the flagman was in a position where his means of observing the approach of outgoing trains on the east track was obstructed, or else not knowing where the flagman was, urged his horse upon the track almost immediately upon the passage of the rear car of the Chicago train, *without looking up the east main track to see whether any outgoing train was approaching.* Right at this juncture the horse and wagon were struck by the caboose of a construction train coming out of Minneapolis, which caused the injury complained of.

While we appreciate the caution that should be used in taking a case of this kind from the jury, especially when the circumstances are somewhat numerous and complicated, yet we are compelled to say that the act of Barnum in thus rushing so hastily upon the track, without awaiting any signal from the flagman or using his own eyes by looking up the track, was, under all the circumstances, so clearly and palpably an act of negligence that we cannot say that the court erred in directing a verdict for defendant. That ordinary prudence requires one who enters upon a railroad crossing to use his senses for the purpose of ascertaining whether he may cross in safety, is, as has been said, an established rule of both law and experience. This

was especially true under the peculiar circumstances of this case; and we think the safety of the public will be best subserved by impressing this duty upon them. *Brown* v. *Mil. & St. P. Ry. Co.*, 22 Minn. 165; *Railroad Co.* v. *Houston*, 95 U. S. 697; *Allyn* v. *Boston & Albany R. Co.*, 105 Mass. 77; *Wright* v. *Boston & Maine R. Co.*, 129 Mass. 440; *Cleveland, etc., Ry. Co.* v. *Elliott*, 28 Ohio St. 340; *Chicago, R. I. & Pac. R. Co.* v. *Bell*, 70 Ill. 102; *Illinois Cent. R. Co.* v. *Goddard*, 72 Ill. 567; *Chicago & N. W. Ry. Co.* v. *Hatch*, 79 Ill. 137; *St. Louis & S. E. Ry. Co.* v. *Mathias*, 50 Ind. 65; *Haines* v. *Illinois Cent. R. Co.*, 41 Iowa, 227; *Benton* v. *Cent. R. Co.*, 42 Iowa, 192; *Pennsylvania R. Co.* v. *Richter*, 42 N. J. Law, 180; *Zimmerman* v. *Hannibal & St. J. R. Co.*, 71 Mo. 476; *Ormsbee* v. *Boston & Prov. R. Co.*, 14 R. I. ——; 1 Thompson on Negligence, 426; Wharton on Negligence, § 382.

It is undoubtedly true that there may exist exceptional circumstances that might excuse a traveller from looking for approaching trains, as where the view of the track is obstructed—in other words, where compliance with the rule would be unavailing—or where the direct act of the company or its agent has put the person off his guard and induced him to cross the track without using this precaution. For example, had the flagman signalled Barnum to cross, or had the latter seen the flagman standing where he could see an approaching train on this track, but giving no signal that a train was approaching, he might have had a right to assume, without looking, that there was no danger. But, in the absence of either of these states of facts, and with his knowledge of the frequency with which trains passed, it was clearly his duty to use his own eyes before driving upon the track. For him to thus rush upon it without using this precaution, and so close to the rear of the Chicago train as not to give the flagman time to signal the approach of another train, was clearly negligence. We may also remark that, in our judgment, the evidence almost conclusively shows that the bell was being rung upon the engine of the train which caused the injury. The fact that there was so much noise that Barnum possibly could not hear it, was an additional reason why he should have used his sense of sight.

Order affirmed.