TERENCE W. SWEENEY *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

## February 4, 1885.

Railway Company—Injury to Engineer—Contributory Negligence.—
  The plaintiff, a locomotive engineer in the service of defendant, was running a train over its road immediately after a very heavy storm, which he knew had caused numerous slides and washouts along the whole line of road. He knew that no section-men had been along the line after the storm, and that he had to rely on his own watchfulness to guard against danger. He was going around a curve where he knew he was liable to meet dangerous places, but could not see or detect danger more than 130 feet ahead. He unnecessarily continued at a rate of speed so great that it was impossible for him to stop his train within the distance that he could see a washout, and consequently ran into it and received the injury complained of. *Held*, that the trial court was justified in dismissing the action, on the ground that it appeared that the plaintiff was guilty of contributory negligence.

Appeal by plaintiff from an order of the district court for Hennepin county, *Lochren, J.*, presiding, refusing a new trial.

*Merrick & Merrick* and *A. L. Levi*, for appellant.

*J. D. Springer*, for respondent.

MITCHELL, J. This was an action for damages for injuries caused by the alleged negligence of defendant. The answer denied negligence on part of defendant, and alleged contributory negligence on part of plaintiff. When plaintiff rested, the court, on motion of defendant, dismissed the action.

We are inclined to think that there was evidence reasonably tending to prove that defendant was negligent in not properly protecting

its road-bed at the place of accident by ditches and culverts for the passage of water. Hence the case should have gone to the jury, unless the evidence affirmatively showed negligence on part of the plaintiff so clearly and palpably as to come within the rule laid down in *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482. This presents the only question in the case. The plaintiff was in the service of defendant as locomotive engineer on a mixed train running between Waterville and Red Wing on what was known as the "Cannon Valley Division." At the time of the accident, July 21, 1883, he was making his third round trip, and had been over the road once on a former occasion. Hence, although not so well acquainted with the road or the topography of the country as one longer in the service, he must be presumed to have had a general knowledge of both. On the day mentioned he started from Waterville in the morning, and arrived at Red Wing at 11:25 A. M., and left there on his return trip at 1:35 P. M. For the first few miles before he reached Red Wing it had been raining quite hard, and continued to rain for some time after he reached that place. Just before starting from Red Wing the conductor of the train read him "an order" to the following effect: "Look out for slide, seven miles east of Cannon Falls, for 200 feet on the track, a foot deep. Look out for washouts between switches at Cannon Falls, and a slide east of Morristown." When he got about a mile out of Red Wing, the train was signalled by a section-man, who informed him that there was a washout a short distance ahead. Plaintiff and the conductor both got off and examined it. They concluded it was safe, and both of them got on the engine and passed over. Just beyond this was a stretch of bottom land for about two and one-half miles before coming to a curve. Across this bottom plaintiff went at the rate of 18 to 20 miles an hour. The curve beyond this bottom was about half a mile long, and ran around or near the base of a hill, and cutting through a point of it. As he approached the curve, plaintiff shut off steam and called for brakes, so as to go slow around the curve, and kept, as he states, a sharp lookout ahead. His reasons for doing so, according to his own statement, were that the conductor told him they had to go slow "because there were bad places."

Plaintiff also says that although they had not yet got near the place where the "order" warned them of washouts and slides, yet he thought they would meet with danger "sooner than that," and "I thought there might be trouble." "I was going round a curve *where I could not see,* and I wanted to be cautious." He "slowed" the train to seven or eight miles an hour, and was *going at that rate* when he first saw a washout about four car-lengths, or 125 or 130 feet, ahead. He called for brakes, and supposes they were applied, and "put the lever over on the back-motion, and gave her steam," but did not succeed in stopping the train before the engine struck the washout and was ditched, causing the injury complained of. He also testifies that the train was still running at the rate of seven or eight miles an hour, until the engine was within ten or twelve feet of the washout, and was going at the rate of four or five miles an hour when it struck it.

There is no claim that plaintiff, on passing this curve, could not have slacked up to a rate of speed less than seven or eight miles if he had chosen to do so. The train had no steam or air brakes, and there is no pretence that the speed was not slackened as rapidly as could have been expected, with the appliances it had, after the washout was discovered; the only difficulty being that the washout was not discovered soon enough. Plaintiff does not state in what distance he could have stopped the train when going seven or eight miles an hour, but he says: "*If everybody attends to business, going four miles an hour, with the appliances on that train, I could stop her in three car-lengths—about 100 feet.*" It follows that at seven or eight miles it would take a much greater distance. It also very clearly appears that plaintiff did not suppose that any section-men had been over this part of the road after the storm, and hence he was not relying on signals, but was "feeling his way."

From this statement of facts we think it almost conclusively appears that the plaintiff knew there had been a very heavy storm, which had caused slides and washouts at various places along the whole line of the road, and that he was liable to meet with them at almost any exposed point on the line; and that he had reason to believe, and did believe, that he was liable to meet with them in going around this very curve; and that he knew he had to depend upon his

own care and watchfulness to avoid them; and that in going around this curve he could, even with vigilant watchfulness, see a washout a distance of only 125 or 130 feet ahead, but that he was still going at the rate of seven or eight miles an hour,—a rate so great that it would be impossible for him to stop his train within the distance at which he could discover danger. On the particular point involved, the case is not distinguishable from that of *Mantel* v. *Chicago, M. & St. P. Ry. Co., ante,* p. 62, decided at the present term. Under the circumstances, ordinary care demanded that plaintiff should have slackened his train to a rate of speed that would have enabled him to stop it within the distance that he could see danger ahead. The only excuse for not doing so is that he was required to make schedule time. This excuse is frivolous. No rules can compel engineers to run into imminent danger, and hazard the safety of themselves and their trains. On the contrary, we apprehend that they are not only at liberty, but are required, when running over a road during or immediately after heavy storms, to run cautiously and without regard to "time-card time," and especially in places liable to slides or washouts.

From these considerations we have arrived at the conclusion that the court was justified in taking the case from the jury. We have done so with some hesitation, for the reason that it is perhaps almost a "border" case, and we recognize the caution that should be exercised in this class of cases not to encroach upon the domain of the jury. It is sometimes an exceedingly close and difficult question to decide whether or not a case of this class should be submitted to the jury. In a case coming very near the line, we are disposed to give some weight to the judgment of the trial judge. This consideration has some additional weight in this case, from the fact that we have not the full benefit of the explanation of the topography of the country given in the court below by Spicer, the witness who made the map before us.

Order affirmed.