Esaias Rheiner *vs.* Chicago, St. Paul, Minneapolis & Omaha Rail-
way Company.

December 9, 1886.

**Contributory Negligence—Railroad Crossing.** — Evidence in this case·
considered, and *held* to show negligence on plaintiff's part, contributing
to the injury complained of, and justifying the dismissal of the action
below.

Appeal by plaintiff from an order of the district court for Wash-
ington county, *McCluer,* J., presiding, refusing a new trial.

*Searles, Ewing & Gail,* for appellant.

*John D. Howe* and *Fayette Marsh,* for respondent.

Berry, J. This action is based upon defendant's alleged negli-
gence in running a locomotive upon and killing plaintiff's horses at
a railroad crossing. At the close of plaintiff's case the action was
dismissed by the court. This was right, if, as defendant contends,.
the evidence clearly shows contributory negligence on plaintiff's part.
It appears that, between 4 and 5 o'clock in the afternoon of October
17th, Hammerly, plaintiff's servant, was driving the horses northerly
up a street parallel to the railway. On his way he passed the loco-
motive, which was being run upon a turn-table on a switch track.
The switch and turn-table were some 600 feet south of the crossing,
where the accident complained of took place. It distinctly appears
that Hammerly had reason to apprehend, and in fact did apprehend,
that the locomotive would shortly pass up the track over the crossing.
When he reached a point in the street opposite and about 40 feet
distant from the crossing, he turned easterly to drive over it, stop-
ping for "a minute or two," and looking for the locomotive, but with-
out seeing it. At that place he could see the track (in the direction
from which the locomotive must come) for a space of 615 feet,.
though, for a space beyond, his vision was somewhat obstructed by a
round-house near the turn-table. Having thus looked, he started
on towards the crossing, driving, as he testifies, "kind of slow,— slow
steps,"—without again looking southerly until he was "right on the

track" at the crossing, where the horses were struck before he could get them out of the way. And he thus failed to look, notwithstanding, as he approached the crossing, he could see further and further around the round-house and down the track. The horses were attached to an ice wagon, containing some five or six hundred pounds of ice. The road to the crossing descended, and was rough and stony, so that the wagon made considerable noise. The wagon was covered, so that from the seat he could not see "on the side" without throwing his head and shoulders forward "a foot or so," in order to enable him to look around the covering, and the wind was in the north.

In these circumstances it was not enough for him, while passing from the street to the crossing, to *listen* simply, as he swears he did. The inadequacy of mere listening is apparent in view of what must, upon the evidence, be taken to be the fact, viz., that the locomotive bell was kept ringing from the time when the locomotive left the switch until it struck the horses, though Hammerly swears that he did not *hear* it, owing, as we may presume, to the noise of the wagon, the direction of the wind, and his position inside the wagon cover. He had been over the crossing several times before, so that he was not unfamiliar with it. While passing from the street to the crossing, there was, so far as appears, nothing to prevent his watching the track, nor to require or substantially distract his attention in any other direction,—nothing to prevent him from seeing the locomotive wherever it might be within a distance of more than 600 feet south of the crossing, and the only conceivable reason why he did not see it is that he did not use his eyes.

The case appears to be one of gross contributory negligence. The general rule, repeatedly laid down by this court—*Donaldson* v. *Milwaukee & St. Paul Ry. Co.,* 21 Minn. 293; *Brown* v. *Milwaukee & St. Paul Ry. Co.,* 22 Minn. 165; *Abbett* v. *Chicago, Mil. & St. Paul Ry. Co.,* 30 Minn. 482, (16 N. W. Rep. 266)—is that reasonable care requires a person approaching a railroad crossing with a view to pass over it, to use, not only his ears, but his eyes also, to avoid passing trains. The plaintiff not only disregarded his duty under this general rule, but his negligence is enhanced by the consideration that he

had actual warning of the probable approach of the locomotive. He not only apprehended its approach, but to some extent acted upon the apprehension, though not to the extent which reasonable care and diligence required.

This case is more nearly analogous to the *Brown Case*, 22 Minn. 165, the *Abbett Case*, 30 Minn. 482, (16 N. W. Rep. 266,) and the *Mantel Case*, (*Mantel* v. *Chicago, Mil. & St. Paul Ry. Co.*,) 33 Minn. 62, (21 N. W. Rep. 853,)—than it is to the *Loucks Case*, (*Loucks* v. *Chicago, Mil. & St. Paul Ry. Co.*,) 31 Minn. 526, (18 N. W. Rep. 651,) or the *Hutchinson Case*, (*Hutchinson* v. *St. Paul, M. & M. Ry. Co.*,) 32 Minn. 398, (21 N. W. Rep. 212.) From the latter two (the decisions in which were closely confined to special facts appearing) it is clearly distinguished by the circumstances (among others) that here there was not only nothing requiring any considerable attention from plaintiff's servant other than the track to the south of the crossing, and nothing to distract his vision from it, but he had reason to apprehend, and did apprehend, that the locomotive which he had just seen a little distance below would shortly be upon the crossing; and, as he did not see it when he stopped and looked, there was the greater reason for him to watch out for it afterwards, so as to keep out of its way, as he had ample time and opportunity to do if he had but used his eyes.

Order affirmed.