## NORTHERN PAC. R. CO. v. PETERSON et al., (two cases.)

(Circuit Court of Appeals, Eighth Circuit. May 1, 1893.)

### Nos. 198, 199.

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—EVIDENCE.

Plaintiffs, riding in a wagon immediately in the rear of another wagon driven by a boy of 15, were approaching a railroad crossing, with whose surroundings they were unfamiliar, on a dark night. The wagons were stopped at a point which was some 85 feet from the track, with whose

exact location they were unacquainted. From this point there was a view of less than 500 feet of the track, owing to a deep cut near the crossing. Here they looked and listened, but, perceiving no train, started on again. At this moment their attention was attracted to a light some 40 rods in front and a little to the left of them, which they took to be on the railroad, and which they watched until the second wagon was on the track, when for the first time they discovered a train to their right, some 10 or 15 rods distant, and approaching at the rate of 30 miles an hour. Before they could avoid the danger the engine struck the wagon, killing the horses and injuring plaintiffs. *Held*, that it could not be said as matter of law that they were guilty of contributory negligence, and the case was one for the jury.

In Error to the Circuit Court of the United States for the District of Minnesota.

These were actions by Charles U. Peterson against the Northern Pacific Railroad Company and by Frank O. Peterson against the same defendant for personal injuries. There was judgment for plaintiff in each case, and defendant brings error. Affirmed.

Tilden R. Selmes, for plaintiff in error.

John W. Arctander, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. These writs of error were sued out to reverse two judgments against the Northern Pacific Railroad Company, the plaintiff in error, and in favor of the defendants in error, respectively, which were rendered on account of personal injuries resulting to them from the collision of an engine and train of cars operated by the company with a wagon in which they were crossing the railroad upon the public highway. The defendants in error, who were the plaintiffs below, and who will be so designated, brought separate actions, but these actions were tried together to the same jury, and the verdicts and judgments rest upon the same record. This record discloses the following facts:

Between 7 and 8 o'clock in the evening of November 28, 1890, the engine drawing a passenger train struck the wagon in which the plaintiffs were crossing the track, and seriously injured them. There was no moon. The night was dark and cloudy. The plaintiffs were returning from St. Paul, where they had been to market some produce, to their homes in Chisago county, about 37 miles northeast of the city. White Bear is a town between St. Paul and Chisago county, and the accident occurred at the crossing of one of the highways between St. Paul and White Bear, about six miles from the city. The railroad runs east and west at this point and the highway crosses it at grade, and at right angles. The train that injured the plaintiffs came from the east, and struck them as they crossed the track going north. Two hundred feet east of the crossing the railroad enters a cut which is 400 feet in length, about 9 feet in depth at its deepest point, and which diminishes in depth in each direction from that point. For about 1,900 feet east of the crossing the track is straight, but at that

point there is a sharp curve in a cut about 16 feet deep. On account of the cut 200 feet east of the crossing, and other obstructions to the vision, one approaching the railroad from the south on the highway could not see an engine approaching the crossing from the east at a distance of more than 540 feet when he was further south than 47 feet from the middle of the track, but from that point to the track the line of vision rapidly extended until, when he reached the track, he could see an engine approaching at a distance of about 2,000 feet. As the plaintiffs approached the crossing, August Peterson, a boy 15 years old, and the son of the plaintiff Frank O. Peterson, was driving the latter's team of mules, which was attached to a lumber wagon, and the plaintiff Charles U. Peterson was driving his own team of horses, attached to a similar wagon, just behind the mule team, and Frank O. Peterson was riding with him. No one of these three persons was familiar with the topography of the land about this crossing, or knew of the cuts or curves to which we have referred. None of them was familiar with the highway, or had traveled over it more than three or four times. None of them knew where this railroad crossing was, though they knew there was such a crossing somewhere between St. Paul and White Bear. The teams traveled about three miles an hour. They stopped when the mule team was about 85 feet south of this crossing, and the plaintiffs and the boy looked and listened, but neither heard nor saw anything of the coming train. The teams walked forward, and, as they started, the attention of all three of the travelers was directed to a light about 40 rods in front and a little to the left of them, which they supposed was on the railroad. They watched this light until the forward team had just crossed the track and the rear team was just upon it, when they first saw and heard the engine which was approaching from the east at the rate of 30 miles an hour, and at a distance of only 10 or 15 rods from them. Before the second team could cross, the engines struck it, killed the horses and injured the men. The headlight of the engine was brightly burning. There was the usual conflict of testimony as to whether or not the whistle was sounded or the bell rung as the engine approached the crossing. The plaintiff's witnesses swore that they were not; the defendant's, that they were.

At the close of the testimony the defendant requested the court to instruct the jury to return a verdict in its favor. The court refused the request, and this refusal is the only error assigned.

The question of the negligence of the defendant could be determined only by finding whether or not the whistle was sounded or the bell rung as the engine approached the crossing. These facts were disputed, and the court was compelled to submit their determination to the jury; so that the only question raised by this request was whether or not, under this evidence, the plaintiffs were so conclusively shown to be guilty of contributory negligence that they were not entitled to recover. It is only when the facts are undisputed, and are such that reasonable men can fairly

draw but one conclusion from them, that the question of negligence is ever considered one of law for the court. Railway Co. v. Jarvi, 53 Fed. Rep. 65–70, 3 C. C. A. 433; Railway Co. v. Ives, 144 U. S. 409–417, 12 Sup. Ct. Rep. 679; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569; Railroad Co. v. Pollard, 22 Wall. 341; Bennett v. Insurance Co., 39 Minn. 254, 39 N. W. Rep. 488; Abbett v. Railway Co., 30 Minn. 482, 16 N. W. Rep. 266. Tested by this rule, the court below properly refused to take this case from the jury. The question was whether or not the plaintiffs were at the time of the accident exercising that ordinary care and diligence to protect themselves from injury that reasonably prudent and careful men would have used in similar circumstances. The evidence in this case was not such, in our opinion, as would compel all reasonable men to draw the inference that they did not exercise that care. The darkness of the night; the proximity of the cut to the crossing, and plaintiffs' ignorance of it; the facts that they were not familiar with the highway; that they did not know the place of the crossing; that when the forward team was 85 feet from it they stopped, looked, and listened for the train, but neither saw nor heard anything of it; that the train was running at a speed which enabled it to pass from the cut to the crossing in less than 5 seconds; that, as the jury must have found, no bell was rung or whistle sounded; and that from the time their teams started forward again until they were upon the track, and the approaching engine was within 15 rods of them, their attention was absorbed by the light 40 rods in front of them and on their left, which they supposed was on the railroad,—present an array of facts and circumstances from which we are unable to say that reasonable men might not fairly infer, as did the jury at the trial, that these plaintiffs exercised as much care as reasonably prudent men would have used under such circumstances.

The judgments below are accordingly affirmed, with costs.