ANNA LEONARD, Administratrix, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 24, 1896.

Nos. 9753—(158).

**Negligence—Contributory Negligence—Question for Jury.**

Where the evidence is conflicting or is uncertain as to the existence of negligence or contributory negligence, the question is not one of law, but of fact, and should be settled by the jury; and this is so whether the evidence is conflicting or uncertain, or because, the facts being undisputed, fair-minded men might honestly draw different conclusions from them.

**Same.**

The deceased, a brakeman in the defendant's employ, undertook to couple an engine and a flat car with what is known as a "pilot coupling," and, while so doing, was crushed between the bumper of each and killed. *Held,* that the questions of the negligence of the engineer in charge of the engine, in handling it, and that of the contributory negligence on the part of the deceased, were properly submitted to the jury.

Appeal by defendant from an order of the district court for Ramsey county, Egan, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $3,500.   Affirmed.

*A. H. Bright* and *Munn, Boyesen & Thygeson,* for appellant.
*Edwin A. Jaggard* and *John S. Sanborn,* for respondent.

BUCK, J.   The plaintiff brings this suit as the administratrix of the estate of Walter T. Leonard, who died intestate July 1, 1893; his death being the result of an injury then received, while he was attempting to couple the engine and a flat car of the defendant, at a time when he was its employé as a brakeman.   The accident occurred upon a side track of the defendant's railroad at or near a station called "Barrett."   The grounds of negligence alleged in the complaint are that the track, at the place where the injury occurred, was defectively and improperly constructed, and that the defendant's engine was then and there negligently handled by its fireman, acting in the capacity of an engineer.

The side track—about one-half mile long—was built out to a

[1] Reported in 65 N. W. 1084.

gravel pit, and at both ends it connected with the main track. The grade from the engine towards the flat car was downward, in the proportion of four or five feet to the hundred. The flat car was standing upon this track, when the engine, without any car attached, was run in upon it from the main track for the purpose of coupling it to the flat car, and it ran within five to ten feet of the flat car, and stopped. The coupling to be made was what is called a "pilot coupling"; that is, the front end of the engine was to be coupled to the flat car by means of a pilot bar about four feet and five inches long, weighing about 150 pounds. In order to make this coupling, Leonard stood on the footboard of the pilot, with his left foot resting upon the nose of the pilot; holding the pilot bar across his left knee, and steadying it with his left hand. While in this position, Leonard, with his right hand, gave the signal to Bostwick, the acting engineer, to "come ahead." During this time the engine was not moving, the air brake was released, and Bostwick was in a position where he could see the flat car, part of Leonard's body, and part of his arm. He could, however, see enough of Leonard to know that he was ready for Bostwick to come ahead with his engine. There was evidence tending to show (1) that the engine was moved by the force of gravity alone; (2) that it was moved by uncondensed steam; and (3) that it was moved by compressed air. But, whatever was the propelling force, as it moved forward, the pilot bar, instead of entering the eye of the draw bar on the flat car, passed under it, and Leonard fell sideways between the bumpers, and was crushed by them; there being a bumper on the end of the flat car, and one on the front end of the engine. The engine was moving forward towards the flat car at the rate of about three miles an hour.

One of the contentions of the plaintiff is that the engine could and should have been so handled, and kept under such perfect control, that the injury could not have happened. There is evidence tending to support this theory of the plaintiff. Bostwick testified that he could have stopped the engine in 2½ feet, with the air brake, if it was moving at the rate of 3 miles an hour, and in a trifle over a foot if the engine was moving at the rate of 2 miles an hour, and that it might be moved and stopped within 6 inches. He also testified that, after he got the signal to come ahead, he was looking

and waiting until he felt the engine strike the car. He testified further that it seemed to him that he had just simply got started when Mr. Calkins gave him the signal to stop and back up; yet this was not done by him until Leonard was caught between the bumpers and killed. Calkins was the engineer, and, at the time he gave Bostwick the signal to stop, was standing on the ground, on the right-hand side of the engine, about five feet from it, and halfway between Bostwick and the flat car. Bostwick was not looking for signals from Calkins, but from Leonard; but, as Leonard gave no other signal than the one we have stated, he stopped upon seeing the signal given by Calkins, who could see Leonard, and saw him miss the coupling. Calkins gave the signal to stop when he saw Leonard fall between the drawhead of the engine and the drawhead of the car. The witness Reeves testified that he could start an engine and stop it within an inch, or, if given a mark, that he could stop an engine within an inch of it. The witness Rouse testified that he could move an engine inch by inch, or four or five inches at a time. Harrity, another witness, testified that an engine ought to be started and stopped within a foot. Several witnesses testified in behalf of the defendant that Bostwick handled the engine in the ordinary and customary way. There was evidence also tending to show that Bostwick did not handle the engine in the usual and customary manner, but in a careless and improper way, and this question was a vital point in the case. The rate of speed of the engine may possibly have affected Leonard's ability to make the coupling with safety. The manner in which the acting engineer used the appliances in moving the engine forward and stopping it, and moving it backward, was one of the controverted questions between the parties.

The defendant also contends that Leonard's death was due to his own carelessness, and to his contributory negligence. The law, however, is "well settled that, when there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men might honestly draw different conclusions from them." Abbett v. Chicago, M. & St. P. R. Co., 30 Minn. 482, 16 N. W. 266. There can be no

reasonable doubt but that the facts in this case bring it within this rule.

It is claimed, however, that Leonard assumed all the risks as to the grade of the track. The acting engineer, Bostwick, testified as to this grade as follows: "Well, the track was all right, but the ground is a little bit,—a little down hill, a little grade there. I don't know just how much, but there is a grade right where the engine stood,—a light grade." It does not appear that the condition of the track was known to Leonard, and we cannot assume that such a grade was so obvious that he was chargeable with notice of its condition. If he did not know of this steep grade in the track at the point where the accident occurred, then it cannot be held, as a matter of law, that he assumed the risk of the danger arising therefrom.

But even if he knew of the condition of the track, as to the grade, a cause of action against the defendant would not be defeated thereby, if Leonard's death resulted solely from the negligent and careless manner with which Bostwick handled the engine. He had a right to assume that the engineer in charge of the engine would exercise ordinary care in operating the engine and controlling its movements. Although he was an experienced brakeman, yet that experience could not fully protect him against the unforeseen negligence or carelessness of the engineer in handling the engine. While it appears that Leonard gave the signal to Bostwick to "come ahead," yet it does not satisfactorily appear that he could see the person acting as engineer, or that he knew whether it was Bostwick, the fireman, or Calkins, the regular engineer. Calkins testified that he was standing about five feet from the engine, and was giving signals to Bostwick; that he was under his supervision, and supposed to do as he told him; that Bostwick was governed by his signals as long as Bostwick could not see Leonard; and that he could not see him after he stepped onto the pilot. If the jury believed this evidence of Calkins, then they had a right to find that the acting engineer was performing his duty under the direction and supervision of Calkins, the regular engineer, and, if the engine was handled carelessly and negligently under Calkins' direction, then it would be immaterial whether Leonard knew that Bostwick was handling the engine. It was for the jury to settle any disputed ques-

tions of fact, and, upon all of the facts, find upon the question of negligence, under proper instructions from the court.

We have carefully examined all of the assignments of error, and find none which we need discuss, other than appear herein. The order denying the motion for a new trial is affirmed.