# HANNAH KNUDSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 28, 1911.

Nos. 17,049—(57).

**Contributory negligence question for the jury.**

> The plaintiff's intestate was killed on a dark night at a highway crossing by the defendant's engine, which had only a dim headlight. The wind was blowing. Evidence considered, and *held,* that the question of his contributory negligence was one for the decision of the jury, and not for the judge.

Action in the district court for Polk county by the administratrix of the estate of Charles Knudson, deceased, to recover $5,000 for the death of her intestate. The substance of complaint and answer is stated in the opinion. The reply was a general denial. The case was tried before Watts, J., and a jury which rendered a verdict of $3,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*J. D. Sullivan,* for appellant.

*Charles Loring* and *G. A. Youngquist,* for respondent.

START, C. J.

The plaintiff's husband and intestate, Charles Knudson, hereafter referred to as the intestate, was killed, on October 19, 1909, at eight o'clock in the evening, at a highway crossing near the village of Fisher, by the defendant's engine and freight train. The plaintiff brought this action in the district court of the county of Polk to recover damages for his death, on the ground, as alleged in the complaint, that it was caused by the defendant's negligence in failing to ring the bell or blow the whistle, or to display any proper and sufficient light on the engine as it approached the crossing. The

[1]Reported in 130 N. W. 994.

answer denied the alleged negligence of the defendant, and alleged that the intestate's death was caused by his own negligence. The cause was tried to a jury, and at the close of the evidence the defendant moved for an instructed verdict in its favor, on the ground that it conclusively appeared from the evidence that the intestate was guilty of contributory negligence. Motion denied. Verdict for plaintiff for $3,000, and the defendant appealed from an order denying its blended motion for judgment or a new trial.

The evidence was concededly sufficient to take the case to the jury on the issue of the defendant's alleged negligence in not giving the statutory signals as the engine approached the highway crossing, and the only question presented by the record is whether the evidence so conclusively established the contributory negligence of the intestate as to make the case an exceptional one, and require the judge to decide the issue as a matter of law. There was evidence tending to establish the evidentiary facts following:

The intestate was a farmer, who lived three and one-half miles from the station, and was familiar with the defendant's railway tracks in the vicinity of the highway crossing; that the highway ran through the village along the south side of the defendant's roadbed and tracks for about half a mile, where it turned across the railway tracks, one of which was the main and the other the passing track, which was the first track to be crossed in going west; that a person driving along the highway towards the crossing, when he got within one hundred feet of the crossing, would have an unobstructed view to the southeast of the railway tracks, the direction from which the engine and cars came which killed the intestate; that there were switch lights, street lights, and the station buildings in the direction from which the engine came; that at the time of the accident it was very dark and hazy, and the wind was blowing from the south; that the engine was equipped with a very dim headlight, apparently no better than a smoky lantern; that the engineer first discovered the intestate when the engine was close to the crossing, some twenty-five feet therefrom; that the head brakeman, who was sitting on the fireman's side of the engine, cried out, "Stop!" and the engineer jumped up and began to throttle the engine; he looked

out of the window, and the headlight enabled him to see the crossing, and also the horses jump on the track; that when the engineer was in the act of closing the throttle the engine struck the team, and the intestate was instantly killed; and, further, that no warning that the engine was approaching the crossing was given.

The evidence as to many of these facts was radically conflicting; but, in determining whether the defendant was entitled to a directed verdict, that view of the evidence most favorable to the plaintiff must be accepted. The question, then, is: Does the evidence so clearly and so conclusively establish the intestate's contributory negligence that fair-minded men could not draw any other conclusion therefrom. If the accident had happened in the sunlight, but one conclusion could be fairly drawn from the evidence, namely, that the intestate must have been guilty of contributory negligence. Such, however, is not this case; and we are of the opinion, in view of the conditions under which the intestate attempted to cross the railway tracks, that the question of his negligence was one upon which fair-minded men might well differ.

It is not conclusive from the evidence that the intestate did not look or listen for approaching engines and trains as he neared the crossing, or that, if he had done so, he must necessarily have discovered the impending danger. It may be reasonably inferred that the wind in some degree prevented him from hearing the approaching engine. Nor does it necessarily follow that, if he had looked, he must have seen the engine in time to have saved himself; for the dim headlight in the darkness may have misled him. It is not an unreasonable inference that the headlight might have appeared to him to be stationary, or one of the several lights in the direction from which the engine was coming. That the night was dark, and the headlight a delusion, instead of a warning, is indicated by the testimony of the engineer, who, it will be presumed, was vigilant as he approached the highway crossing and yet he did not see the intestate's team until he was within twenty-five feet of the crossing, when he saw the horses jump on the track.

Again, the plainest principles of human justice forbid that it should be inferred, as a matter of law, that a man killed by the neg-

ligence of another was guilty of negligence contributing to his death, unless the undisputed evidence clearly and fully rebuts the presumption, founded on the universal and insistent instinct of self-preservation, that he exercised due care for his safety.

We hold, upon a consideration of the whole evidence that the question of the negligence of the intestate was one of fact, to be decided by the jury, and not by the judge.

Order affirmed.