GEORGE A. LA PRAY v. LAVORIS CHEMICAL COMPANY and Another.[1]

February 9, 1912.

Nos. 17,429—(224).

**Injury to servant of tenant — liability of landlord.**

The appellant was the owner of a building in which there was a freight elevator maintained by it for the use of its tenants and their employees.

[1] Reported in 134 N. W. 313.

[Note] Liability of owner for injury to tenant's guests or employees by defect in premises generally, see note in 17 L.R.A. (N.S.) 1161.

The plaintiff's intestate, an employee, was killed by the alleged negligence of appellant in failing to keep the elevator in a safe condition. *Held:*

1. That it was not necessary to show that the landlord had actual notice of the unsafe condition of the elevator in order to charge him with negligence, for it was sufficient to show that he either knew, or by the exercise of ordinary care he might have known, its condition.

2. If the evidence in a personal injury case leaves the question of causal connection between the injury and the alleged negligence a matter of conjecture only, the defendant is entitled to a directed verdict; but it is not necessary to prove such connection by direct evidence. It is sufficient if the circumstantial evidence furnishes a reasonable basis for the inference that the injury was caused by the negligence.

3. Where a person is killed by the negligence of another, it cannot be inferred that he was guilty of contributory negligence, unless the undisputed evidence clearly and fully rebuts the presumption that he exercised due care for his safety.

4. The evidence was sufficient to sustain a finding by the jury that the appellant was negligent in the care of the elevator, which was the proximate cause of the death of the deceased, who was not guilty of contributory negligence. The verdict is sustained by the evidence.

5. There were no reversible errors in the rulings of the trial court as to the admission of evidence.

Action in the district court for Hennepin county by the administrator of the estate of Chester A. La Pray, deceased, to recover $5,100 for the death of his intestate. The answer of Lavoris Chemical Company alleged that deceased was killed by his own carelessness and not by any fault or neglect on its part. The separate answer of the Penn-Minn Realty & Investment Company denied that the elevator was ever in a dangerous, defective or unsafe condition and denied that it was ever used when it did not work properly. The action was tried before John Day Smith, J., and a jury which returned a verdict in favor of plaintiff against defendant Penn-Minn Realty & Investment Company for $2,500 and in favor of the Lavoris Chemical Company. From an order, Booth, J., denying its motion for judgment notwithstanding the verdict or for a new trial, the Penn-Minn Realty & Investment Company appealed. Affirmed.

*Edward T. Teitsworth,* for appellant.

*Ayers & McDonald* and *F. E. Clinite,* for respondent.

STANT, C. J.

The defendant Penn-Minn Realty & Investment Company, hereafter referred to as the Investment Company, was at the times herein stated the owner of a certain building in the city of Minneapolis, known as the "Burd Building," and the defendant Lavoris Chemical Company, hereafter referred to as the Chemical Company, was the lessee of the fifth floor of the building. This building was equipped with an electric freight elevator running from the basement to the top floor, which was maintained by the Investment Company, pursuant to its agreement, for the use of its several tenants of the building and their employees.

The plaintiff's intestate, a boy sixteen and one half years old, was in the employ of the Chemical Company, and on October 20, 1909, was killed by the elevator. This action was brought in the district court of the county of Hennepin to recover damages on account of his death, on the alleged ground that it was caused by the defective and unsafe condition of the elevator. The jury found a verdict in favor of the Chemical Company and against the Investment Company for $2,500. It appealed from an order denying its motion for judgment or a new trial.

The appellant bases its claim for a reversal of the order upon the contention that the evidence as a matter of law was not sufficient to sustain a finding that the elevator was in a defective and unsafe condition, or that the appellant was negligent in failing to maintain it in a safe condition; that, even if the elevator was in an unsafe condition, the evidence is not sufficient to sustain a finding that it was the cause of the intestate's death, but leaves it a mere matter of conjecture; that the evidence conclusively shows that the intestate was guilty of contributory negligence; and, further, that the trial court committed reversible errors in its rulings as to the admission of evidence.

These several claims, except the last one, may be considered together, as they are closely connected by the evidence. The law applicable to them is well settled, and only a brief statement thereof is necessary. It is not necessary to show that a landlord, who has

undertaken to maintain the demised premises or any of their appliances in a safe condition, had actual notice of their unsafe condition in order to charge him with negligence; for it is sufficient if it be shown that he either knew, or by the exercise of ordinary care he might have known, their condition. Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289.

If the evidence in a personal injury case leaves the question of causal connection between the alleged negligence and the injury a matter of conjecture only, the defendant is entitled to a directed verdict; but it is not necessary to prove such connection by direct evidence. It is sufficient if the circumstantial evidence furnishes a reasonable basis for the inference of the ultimate fact that the injury was caused by the negligence; but the evidence is not sufficient, if it is merely consistent with the plaintiff's theory of how the accident occurred. Rogers v. Minneapolis & St. Louis Ry. Co. 99 Minn. 34, 108 N. W. 868; Moores v. Northern Pacific Ry. Co. 108 Minn. 100, 121 N. W. 392; Bruckman v. Chicago, St. P., M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263.

Where a person is killed by the negligence of another, it cannot be inferred that he was guilty of negligence contributing to his death, unless the undisputed evidence clearly and fully rebuts the presumption that he exercised due care for his safety. Knudson v. Great Northern Ry. Co. 114 Minn. 244, 130 N. W. 994; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752.

The evidence with reference to the condition of the elevator and the care exercised by the appellant to secure its safety was sufficient, if satisfactory to the jury, to sustain a finding of these facts:

The elevator shaft was equipped with iron fire doors and automatic safety gates. At the basement floor there were two iron fire doors, which opened out from the elevator shaft, on the basement floor, with weights attached to pull them shut, and a hook on each door to fasten them open. An automatic wooden safety gate went down when the elevator went up, in the same ratio of speed as the elevator, and closed the approach to the elevator shaft. The elevator was installed a little over a year before the accident. It was then inspected and

found to be in a safe condition and in good working order. It was subsequently inspected, the last time being some two months next before the accident. Intervening the last inspection and the accident it was in an unsafe condition, and had been for several weeks. When the elevator was in a safe and normal condition, it would, when it reached the lowest floor, the basement, automatically cut off the power and set the brakes, which prevented it from starting again until the power was put on, which was done by moving the cable rope attached to the operating sheave on the machine. In its normal condition the elevator, when in operation, traveled seventy-five feet a minute. It was inspected promptly after the accident, and found to be in an unsafe condition, in that it would not remain stationary when it reached its limit, the terminal level below the basement, but would reverse itself and again start upwards. At different times for several weeks before the accident the elevator, by reason of its defective condition, would, when sent to the basement, reverse itself and start upwards, instead of remaining stationary until the power was applied. This condition might have been discovered and remedied before the accident by proper inspection.

On the morning of the accident the deceased, who was in the line of his duty as an employee of the Chemical Company, gathered up the refuse of the day before on the fifth floor of the building, placing it in boxes, two at least, loaded them into the elevator, and started with it for the basement. The fireman of the building called to him, at the time he reached the basement, and inquired if he could get the elevator. The reply was, "Yes, wait a minute." The fireman heard the elevator moving and went to the shaft and saw that the elevator was moving upwards, and that the deceased was caught between the floor of the elevator and the safety gates. The fireman then jumped on the elevator, reversed it, and the body of the deceased dropped underneath the elevator to the bottom of the shaft. When first discovered, his head and shoulders were turned towards the cable rope on the floor of the elevator, with his legs hanging off, and he was trying to extricate himself. He was dead before he was released. He had unloaded all of the boxes, except one, which was found on the

elevator, while the others were found on the basement floor near the elevator opening.

The evidence as to some of these facts was conflicting. It is quite clear that the evidence was amply sufficient to sustain a finding that the elevator was in an unsafe condition, as claimed, and to charge the defendant with negligence in the premises. It is also quite obvious that, if the unsafe condition of the elevator was the proximate cause of the death of deceased, he was not, in view of his youth and inexperience, guilty of contributory negligence as a matter of law. The pivotal question is, then: What was the cause of his death?

The appellant claims in this connection that the only reasonable conclusion from the evidence is that the intestate, when off the elevator, on the basement floor, after being asked for the elevator by the fireman, and not having fully disposed of the rubbish taken down, reached in from the basement floor and pulled the cable rope to send the elevator up to the fireman, intending himself to remain in the basement to finish his work there, and that when the elevator started up the safety gate came down and caught him between the gate and the elevator floor, and, being unable to extricate himself, he was killed.

On the other hand, the contention of the respondent is that the only reasonable conclusion to be drawn from the evidence is to the effect that the deceased was in the act of reaching in to take the last box from the elevator, when it started up, having reversed itself, and caught and pinioned him as stated, or, seeing that the elevator had reversed and was moving upward, but not appreciating the danger, he tried to get on and stop it, and in so doing was caught and killed.

One thing is certain from the evidence: The deceased was killed by the elevator starting upwards, and the question is: What caused it so to start? The record and the claims of the respective parties indicate that the cause must have been either the act of the deceased in reaching and pulling the cable rope to send the elevator up to the fireman, as the appellant claims, or that the elevator by reason of its defective condition reversed itself, as the respondent claims. The

jury upon the evidence might well have found the claim of the appellant an unreasonable one; hence they rejected it.    Why would the deceased send the elevator up to the fireman, who had been told to wait a minute, before he had taken off the last box, which would not have taken him more than a minute ?    On the other hand, the natural inferences from the evidence are not only consistent with the claim that the elevator started upwards by reason of its defective and unsafe condition, but they point with reasonable certainty to that conclusion.    We are of the opinion that the evidence does not leave the cause of the death of the deceased a matter of speculation or conjecture, but that it is sufficient to sustain a finding that the cause was the defective condition of the elevator.    Such being the case, we hold that the questions of the appellant's negligence and the contributory negligence of the deceased were each one of fact to be decided by the jury, and that their verdict is sustained by the evidence.

The other assignments of error relate to the rulings of the trial court on the admission of evidence.    The plaintiff called the fireman as a witness and examined him as to the accident    The appellant subsequently called the fireman as a witness on its own behalf, who gave testimony contrary to previous statements made by him, as plaintiff claimed.    Thereupon the plaintiff, upon laying the proper foundation therefor, was permitted to show, over the objection and exception of the defendant, that the witness did make the previous statements.    This was not reversible error.    Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L.R.A. (N.S.) 729 ; 2 Wigmore, Evidence, § 903.

Order affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.