PETER MOQUIST v. OWEN LARSEN AND ANOTHER.[1]

April 15, 1921.

No. 22;178.

**Negligence — defendant entitled to directed verdict.**

At the close of the testimony the trial court directed a verdict in favor of the defendant, upon the ground that there was no evidence connecting

[1] Reported in 182 N. W. 609.

him with plaintiff's injury. *Held* that, under the evidence and record in the case, defendant was entitled to a directed verdict.

Action in the district court for Hennepin county to recover $3,300 for personal injuries. The separate answer of defendant Larsen alleged contributory negligence on the part of plaintiff. The case was tried before Fish, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Andrew N. Johnson* and *H. V. Mercer,* for appellant.

*McDowell & Fosseen,* for respondent.

QUINN, J.

Action for damages for injury sustained by plaintiff, claimed to have been occasioned through the negligence of the defendant Larsen's servants. The action was brought against Owen Larsen, a farmer and stock raiser, and R. B. Wrigley, who kept a restaurant in a building at 420 Nicollet avenue, in the city of Minneapolis. At the outset of the trial, upon motion, the case was dismissed as to Wrigley, and the trial then proceeded as though the action had been brought against Larsen alone. At the close of the testimony the court directed a verdict in favor of respondent, upon the ground that there was no evidence connecting him with appellant's injury. From an order denying his motion for a new trial, plaintiff appeals.

On May 1, 1919, at about 9:30 in the forenoon, while plaintiff was passing in a northerly direction on Nicollet avenue in front of such restaurant, he fell upon a steel trap-door which was in the sidewalk and which opened into a passageway leading into the basement of the restaurant where garbage was kept. The trap-door consisted of double doors, one opening to the south, the other to the north. The plaintiff testified as to how the accident occurred as follows:

"A. When I came between Fourth and Fifth streets, from Fifth toward Fourth street in front of 420 Nicollet, just as I stepped on the trap-door it opened from below and my foot slipped backward and I fell forward, and I had my hands in my pockets and couldn't get them out and I fell flat on my face on the sidewalk. * * * I turned around and

saw this garbage wagon driver and I asked him why he didn't put some-body to warn people before he opened the door. And he said, 'You go in and speak to Thompson,' he said. I didn't know, I supposed that it was changed hands. * * * Yes, and he says, 'Thompson, he wants the doors locked.' He said: 'We have got to go down in the basement and open them.' "

The only issue here for determination is, did the evidence connect the respondent with the appellant's injury? The trial court was of the opinion that it did not, and ruled accordingly, and we think correctly. The evidence is very brief. The decisive question is whether there was any proof upon which to submit the question whether respondent's servants opened the trap-door upon the occasion of appellant's injury. Upon cross-examination the respondent testified that his business was farming and stock raising; that in connection therewith he collected garbage from various places about the city of Minneapolis; that his men called regular-ly at the restaurant at 420 Nicollet avenue for garbage as it accumu-lated; that they made daily collections; that the garbage was taken from the Wrigley restaurant through trap-doors in front of the restaurant; that sometimes there were two men with a wagon; that the restaurant keeper was to help his men remove the garbage, and that such arrange-ment was made with Mr. Thompson, who formerly conducted the place.

The rule applicable was well stated by Chief Justice Start in La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313, as follows: "If the evidence in a personal injury case leaves the question of causal con-nection between the alleged negligence and the injury a matter of con-jecture only, the defendant is entitled to a directed verdict; but it is not necessary to prove connection by direct evidence. It is sufficient if the circumstantial evidence furnishes a reasonable basis for the inference * * * that the injury was caused by the negligence."

The record is silent as to what time of day the garbage was usually taken from this basement. There was no attempt to name the driver with whom plaintiff talked at the time of his injury, nor to connect him with the respondent, nor to ascertain in whose employ he was, though the traffic officer talked with him and made entries in his book. Nor does it appear but that testimony might have been adduced bearing directly upon the decisive issue. There was no attempt to connect such driver

with the opening of the trap-door, nor was there any showing but that the trap-doors were being used in connection with other matters by employees about the premises. The whole matter was left to conjecture and speculation. It seems the most that can be said of the evidence is that it left the question of respondent's connection with plaintiff's injury a mere matter of speculation. It is not enough that the proofs are merely consistent with plaintiff's theory as to whose act caused the injury. The testimony should furnish a reasonable basis for the inference that the negligence was imputable to the respondent's servants. It is no more probable that respondent's servants were at the trap-door at the time of the accident than that some other party about the premises was there. The trap-doors were not for the exclusive purpose of removing garbage. The restaurant keeper was to furnish help in removing the garbage from the basement, and, if it were being removed at the time in question, the inference that his help was lifting it up through the trap-door, is just as strong as that the employees of defendant were doing that part of the work. In fact it is more probable and likely that those in his employ were handing it up through the trap-door, to be there received by defendant's employees and loaded into the wagon. But this is all left in doubt by the evidence. We are satisfied that the trial court committed no error in directing a verdict in favor of the respondent.

Affirmed.

DIBELL, J. (dissenting).

The trap-doors were opened into the sidewalk from underneath and the plaintiff was injured. He was bleeding. Almost immediately a garbage man appeared. The plaintiff complained to him that there should have been a warning before the trap-doors were opened. The garbage man said to speak to Thompson. He said: "You go in and speak to Thompson. Thompson, he wants the doors locked. We have got to go down in the basement and open them." The defendant Larsen was called for cross-examination under the statute. He did not otherwise testify. He was frank. He said that he took the garbage from the restaurant; that he was not personally present; that Thompson was to furnish help; that men in his employ called for the garbage; that they made daily collections; that they took it out through the trap-doors in the sidewalk;

that there were two men with the garbage wagon a part of the time, and that he thought there were two at the time the plaintiff was hurt.

Was there evidence that the defendant Larsen, through one or more of his employees, was concerned in the plaintiff's injury? It seems to me there was.

In his testimony Larsen does not suggest that the men collecting garbage were not his men. The inference is quite to the contrary. They made daily collections. There is no suggestion that any one else made collections. His testimony can fairly be taken as an admission that his men were there that morning. It did not occur to him when a witness that any one else was concerned.

That the garbage man who talked to the plaintiff was concerned in removing the garbage is fairly clear. He was not a stranger casually passing. He appeared immediately after the injury to the plaintiff and talked with him about the negligent act. He did not suggest that the restaurant man was helping, or was concerned in the mischief, and probably it would have made no difference if he was. His answer, when charged with fault, was that "Thompson, he wants the doors locked," and that "we have got to go down in the basement and open them." It recognized that he was concerned with the opening of the doors which resulted in harm to the plaintiff. It was a confession and a moral excuse for the injury done to the plaintiff.

Men outside a jury box knowing the facts recited would readily enough conclude that Larsen, through his men, was responsible. A jury could reach such conclusion by just and logical inference without resorting to guess.

HOLT, J. (dissenting).
I concur in the above dissent.