## FORREST O. SALTERS AND ANOTHER v. MYLES E. UHLIR AND OTHERS.[1]

June 21, 1940.

No. 32,328.

*Johnson, Sands & Brumfield* and *Edwin C. Kraus,* for appellants.

*Moonan & Moonan,* for respondents.

HILTON, JUSTICE.

Originally this action was started in December, 1934, to recover property damage inflicted in a collision. Plaintiffs recovered a verdict, and a new trial was granted. Salters v. Uhlir, 196 Minn. 541, 265 N. W. 333. On the second trial a verdict for defendants was directed when plaintiffs rested on order of the court. The motion for a new trial was denied.

The collision took place in midafternoon on September 28, 1934, on highway No. 169. Plaintiffs' vehicle was a one-and-one-half ton tractor and semitrailer about 32 feet in length. Defendant Myles Uhlir was the owner of a 1931 Dodge truck. It was

[1]Reported in 292 N. W. 762.

driven by his brother, defendant John Uhlir, Jr., at the time of the accident. Hereafter the drivers of the respective vehicles will be referred to as plaintiff and defendant.

Since the trial court directed a verdict on the plaintiffs' evidence only, founding his action on the conclusion that it showed contributory negligence as a matter of law, we must take the evidence that is most favorable to plaintiffs to determine the correctness of this order. Knudson v. G. N. Ry. Co. 114 Minn. 244, 246, 130 N. W. 994. Unless the most favorable evidence justifies the conclusion that contributory negligence existed, there is no alternative but to reverse.

Defendant had driven to a field bordering on the north side of highway No. 169 to get a load of cornstalks. The exit from the field was a private driveway entering upon the main highway. It had a rather steep approach to the shoulder, which was about 10 or 12 feet wide and nearly level. The driveway was very sandy. While defendant was leaving the field the loaded vehicle became lodged in the sand about 30 feet from the north edge of the highway. Several men undertook to extricate it.

The most favorable evidence in the record was given by plaintiff Forrest O. Salters. He was driving the commercial freight truck southwesterly along highway No. 169 with a load of canned goods. The weight of the vehicle and freight was 29,100 pounds. The day was clear and the road was dry. His view was unobstructed. When he was 600 feet from the driveway he observed defendants' vehicle. At that time plaintiff was moving at a speed of about 30 to 35 miles per hour. There was a slight downgrade on the highway. Plaintiff took his foot off the accelerator and continued on the north or right side of the highway. He knew that the truck was stuck and that efforts were being made to release it. He also appreciated that he was coming to "an unusual situation." He turned toward the center of the road when he was 300 feet from the driveway and was going at a speed of approximately 31 miles per hour. When he was 250 feet from the driveway the truck started to move forward at about three to six miles per hour. Plaintiff continued to drive in the center of

the highway with the idea of permitting defendant to stop on the level shoulder. When the front wheels of defendants' vehicle reached the top of the incline plaintiff was 150 feet from the driveway. He claimed that he was 75 feet from the driveway when defendant reached the north edge of the pavement. Plaintiff was going 25 miles per hour. He was confronted with testimony given in the first trial in which he said that he was "possibly" 100 feet back.

Defendant continued on to the pavement without stopping and commenced to make a left turn. The truck stopped without completing it with the right front wheel on the south shoulder, and the entire south half of the pavement and about four feet of the north half was covered by the vehicle.

Plaintiff testified that he was 50 feet from the point of impact when he first applied the brakes. On cross-examination he raised the figure to 75 feet and later testified it was 100 feet. He was confronted with testimony given on the first trial which was somewhat different. From a study of the briefs and records, we understand that plaintiff there testified that he first applied the brakes when 100 feet away and also testified that the distance was only 20 feet when he put on the brakes. He testified that he was going 20 or 30 miles per hour (his testimony varied) when he was 100 feet away from the point of the accident. When he was 50 feet away he swung toward his right. There were skid marks behind plaintiffs' truck for 25 or 30 feet. According to plaintiff, he could stop in about 120 feet at a speed of 25 miles per hour and admitted, in effect, that at the first trial he had testified that at the speed of 35 miles per hour he could stop in 75 to 100 feet and at 20 miles per hour in about 100 feet.

The left side of the freight truck struck the rear of the Dodge and continued on for about 60 to 75 feet before stopping. Defendant claims this shows excessive speed. Plaintiff testified that while he applied his brakes off and on to avoid buckling before the impact, after the collision he did not apply the brakes.

The evidence recited is the most favorable. Other testimony does not possess such a characteristic, particularly that of Clyde

A. Salters, who was riding with Forrest.O. Salters, the driver.

Plaintiff had the right of way. 1 Mason Minn. St. 1927, § 2720-19(a): "The driver of a vehicle entering a highway from * * * [a] private road or drive shall yield the right of way to all vehicles approaching on such highway." A similar provision found in 3 Mason Minn. St. 1938 Supp. § 2720-199, was involved in Behr v. Schmidt, 206 Minn. 378, 381, 288 N. W. 722, 723, wherein it was said:

"Until he saw otherwise he had a right to expect reasonable care on the part of any person who might drive from the field onto the road. The box elder trees would tend to obscure defendant's car from his view for a reasonable time at least, but he might well expect defendant to stop even if he saw him drive from behind the box elders. The duty was on defendant to exercise ordinary care to ascertain that no vehicle was coming before he crossed or started to cross the road."

This statement is relevant here. As a reasonable man, plaintiff was entitled to assume that defendant would yield the right of way at least until a reasonable basis to conclude the contrary appeared. If this were not so, the right of way would be of little value and ordinary traffic on highways bottlenecked at every private driveway on which a vehicle was approaching the main thoroughfare. Defendant owed that duty and on the present record clearly violated it. Plaintiff's conduct can be interpreted only in light of defendant's actions. According to plaintiff, he was 150 feet from the driveway when defendant reached the top of the incline, and he was 75 feet from this point when defendant reached the north edge of the highway pavement. Precisely at what point plaintiff should have appreciated that his right of way would be violated need not be resolved now. Obviously it was somewhere in the neighborhood of these two mentioned points. Until a reasonable ground appeared to make plaintiff appreciate that defendant was going to enter the highway irrespective of plaintiff's presence he had a right to assume that due care would be exercised. It was for the jury to decide

whether plaintiff apprehended the risk seasonably and thereafter conducted himself as a reasonable man.  This would include, among other things, the determination of whether the brakes were applied seasonably and properly and whether, with the use of due care, the accident could have been avoided.  His prior testimony as well as that given at the second trial would have to be considered by the jury.  Likewise it was for them to examine all the evidence and determine whether plaintiff slowed down sufficiently and whether he conducted himself as a hypothetical reasonable man would have under all the circumstances.

It must be remembered that this is a case involving a directed verdict based entirely upon evidence produced by the plaintiffs. They should not be precluded by this unless it is clear that from the facts "there is no reasonable chance for drawing different conclusions."  Abbett v. C. M. & St. P. Ry. Co. 30 Minn. 482, 483, 16 N. W. 266; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

And "a motion for a directed verdict presents only a question of law and admits, for the purpose of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence.  If the record discloses evidence, taking the most favorable view of it for the plaintiff, sufficient to sustain a verdict for him, a motion to direct a verdict for defendant should not be granted."  Bayerkohler v. Clara City Farmers Elev. Co. 189 Minn. 22, 23, 248 N. W. 294.

On the record, we do not think that if the most favorable evidence is taken and the most favorable inferences drawn that it can be said that reasonable men would all conclude that plaintiffs' case fell with the weight of its proof of contributory negligence.

Emphasis was placed during cross-examination and mention is made in the brief of the estimates of speed and distance made by plaintiff Forrest Salters.  In automobile collision cases this court has adopted a policy of hesitation when contributory negligence as a matter of law is attempted to be founded on

estimates. In Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879, and the cases there cited, this policy was expressed and applied. We do not think that this is a case to rely upon estimates to find contributory negligence.

By motion, defendants in effect asked the court to rule in their favor on the most favorable evidence plaintiffs produced. It is upon this proposition that the case stands or falls.

We must mention that the trial court stated that he had read the record in the first trial "to acquaint myself with the facts and to get the benefit of his [the late Judge Tifft] judgment in this case." An order granting a new trial wipes the slate clean except insofar as testimony there given may be introduced to confront a witness testifying differently on the second trial. It should not be taken into consideration, directly or indirectly, by the trial court in disposing of the matters raised on the second trial, for the record on the first trial is ordinarily immaterial except for the purpose mentioned. See MacIntyre v. Albers, 175 Minn. 411, 221 N. W. 526.

The order is reversed and a new trial is granted.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.