# JOSEPH L. MURPHY v. TWIN CITY TAXICAB COMPANY.[1]

July 11, 1913.

Nos. 18,066—(184).

**Negligence of master—verdict sustained by evidence.**

> Evidence examined and *held* to support the verdict that defendant's negligence caused the death of plaintiff's intestate, and that there was no assumption of risk or contributory negligence.

Action in the district court for Hennepin county by the administrator of the estate of Mark McDonnell, deceased, to recover $5,000 for the death of his intestate. The facts are stated in the opinion. The case was tried before Dickinson, J., who denied defendant's motions for a directed verdict and a jury which returned a verdict for $3,500 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Keith, Evans, Thompson & Fairchild,* for appellant.
*Joseph L. Murphy* and *C. N. Bracelen,* for respondent.

HOLT, J.

Plaintiff recovered for the wrongful death of his intestate, and defendant appeals from an order denying its alternative motion for judgment or a new trial.

[1] Reported in 142 N. W. 716.

The defendant operates taxicabs for hire in the city of Minneapolis. Plaintiff's intestate, Mark McDonnell, was, for some time prior to his death, employed by defendant as a driver, usually driving the cab or car known as No 17. At four P. M. of October 6, 1911, he was sent out with cab No. 5. His first trip was out toward the Lake Calhoun and Lake of the Isles district, taking two persons to the Minneapolis & St. Louis depot. Some time afterwards, he appears to have driven to St. Paul. On his return, he crossed the Mississippi river upon the Washington avenue bridge at about 10:30 P. M. When somewhat west of the middle of the bridge, the cab appears to have veered suddenly to the right, the front wheels going over the sidewalk which is about 6 or 7 inches higher than the roadway, broke the railing and projected over the edge of the bridge, while both the rear wheels came squarely up against the inner edge of the sidewalk. McDonnell was evidently pitched over the dash and fell to the river flat below. No one saw the accident, but people living on the flat heard the crash and found this injured driver still alive, but death came shortly.

The negligence charged against defendant was furnishing the decedent with a taxicab "equipped with machinery that was wholly unsound and unsafe, and the steering gear of which was worn, loose, and in such condition as to render the said taxicab or car unmanageable and dangerous"; that the decedent did not know this; and that defendant failed to apprise him of the dangerous condition. The defense pleaded, besides a denial of negligence, was decedent's contributory negligence, but, without objection, his assumption of the risk was also submitted to the jury.

Although error is assigned upon certain portions of the court's charge, no further mention thereof occurs in the brief, and we assume that no fault is really found therewith if, as a matter of law, there is evidence to sustain the verdict in the particulars wherein the defendant assails it.

The chief contention of the defendant is that the evidence furnishes no reasonable basis for a finding that defendant's negligence was the proximate cause of the death of plaintiff's intestate. With his characteristic candor and fairness, counsel for defendant concedes that the

evidence justified the jury in concluding that it was negligence to furnish this car, having so much looseness or play in the steering wheel, as an instrumentality for its servant to use. But he says there is no testimony which points to this looseness in the steering wheel as more than a conjectural cause of the accident. We think, however, that there is warrant in the evidence that the defect in the steering apparatus was more than looseness, that it was so serious that occasionally the front wheels "locked," or in other words, when turned to the extreme in either direction, they could not readily, and occasionally not at all, be turned back by the steering wheel. The person who usually drove cab No. 5 prior to the night in question was called by plaintiff and testified to the play of some eight inches in the steering wheel, and also that, when going fast if the course was abruptly changed, the wheels would so lock that it became sometimes necessary to stop the car and get out and move the wheels back by kicking or taking hold of them with the hand. True the credibility of this driver's testimony was impeached by his confession that he had pleaded guilty to an embezzlement charge lodged against him by defendant.

We, however, believe the jury could very properly find corroboration of this driver's testimony in the undisputed facts of the accident. Witnesses first on the scene testified that, for some 20 feet, the wheels of the taxicab had run in the street car tracks. The roadway between the outer rail of these tracks and the sidewalk was about 12 feet wide. To turn out of the tracks, the steering wheel must be turned sharply to the right, and, as soon as out, sharply to the left. If, because of the liability to stick or lock, the course of the front wheels became set, and the driver was unable to at once change it, the car would of course go across the sidewalk. The car, on going up on the sidewalk or in striking the railing, may have loosened the lock sufficiently for the driver to straighten the wheels before he was thrown out. It is clear, from the testimony, that the movement of the car from the street car rails across to and over the sidewalk was not due to skidding. The track made by the car and examined by defendant's manager and others indicated no sliding of wheels. Nor do the facts suggest that McDonnell was inattentive or drowsy, for we find the emergency brake set and the clutch thrown in neutral.

This would rather indicate alertness and presence of mind from the very start of the trouble.

It is significant that defendant called none of its other drivers who had run this car to show that this so-called locking of the front wheels did not happen in steering it. And it is also proper to remark that the examination of the steering equipment of this car made soon after the accident, and a view of parts thereof produced in court is of doubtful value, because of the interchange of certain parts with those of another car.

Further, one of defendant's experts admitted that parts of the steering apparatus may be so worn that the so-called "locking" of the front wheels in a certain course may take place. Although it is claimed the parts here were not so worn, still this was a legitimate question for the jury. We cannot disturb the verdict on the ground that the evidence furnishes no causal connection between the negligence alleged and McDonnell's death. In fact, the course of the cab on the street car track, the abrupt veering over the sidewalk without skidding, the set brake, and clutch in neutral, furnishes the jury a legitimate basis for a finding that the liability of the steering equipment to occasionally fail to work caused McDonnell's death.

The real danger from running the taxicab in question was not the play in the steering wheel; but the fact, if it was a fact, that occasionally, as above mentioned, the front wheels of the cab would, when greatly or abruptly turned, by the steering wheel, get set in their course so that they could not readily, or at all, be changed or turned back. There is not the slightest testimony that decedent knew of this liability of the steering mechanism to wholly fail to work under certain conditions. If he did not know of such defect, then no assumption of risk can be claimed, for the evidence is clear that mere play in the steering wheel of an automobile is not usually attended with any danger of the front wheels becoming set or locked in a certain course.

That a person, who is at all experienced in operating automobiles, can, in a very few movements after taking hold of the steering wheel, ascertain the extent of its looseness or play is no doubt true. But

there is an absence of evidence that such play, as here existed, when unaccompanied with the tendency to lock or set the course of the front wheels, is so dangerous that the ordinary prudent driver would not run the car. The first proposition discussed being found upon sufficient evidence against the defendant, we think it necessarily follows that the decedent's assumption of risk and contributory negligence were questions of fact which clearly are set at rest, as far as this court is concerned, by the verdict and the trial court's approval thereof.

No contention upon any legal proposition applicable to the case has arisen. It is well settled that the connection between negligence and resulting injury must be proven. Proximate cause must not be allowed to rest upon conjecture.. But, in the language of Chief Justice Start: "If the circumstantial evidence in any case furnishes a reasonable basis for the inference by the jury of the ultimate fact that the alleged negligence was the cause of the injury complained of, it is sufficient proof of the causal connection to support the verdict." Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392. "Proof of causal connection may be direct or circumstantial; but the evidence must be something more than consistent with the plaintiff's theory of how the accident occurred." Rogers v. Minneapolis & St. Louis Ry. Co. 99 Minn. 34, 108 N. W. 868, cited with approval in Bruckman v. Chicago, St. P. M. & O. Ry. Co., 110 Minn. 308, 125 N. W. 263.

We conclude that the verdict is not based on mere conjecture, but that, by a fair and reasonable inference from the evidence, the jury was justified in finding that defendant's alleged negligence caused McDonnell's death, and that he neither assumed the risk, nor by his own negligence contributed thereto.

Order affirmed.