IRENE MITTON v. CARGILL ELEVATOR COMPANY.[1]

December 19, 1913.

Nos. 18,270—(140).

**Guard for dangerous machinery.**

1. The evidence was sufficient to justify a finding that defendant was negli-

[1] Reported in 144 N. W. 434.

---

Note.—The question of an employee's right of action for employer's violation
124 M.—5.

gent in failing to provide a railing on a stairway leading to an engine room below, and in failing to guard dangerous machinery therein. Plaintiff's intestate was not an employee of defendant, but was requested by it to go down into the engine room and turn off the engine. *Held* that defendant owed him the duty to use ordinary care in relation to guarding the stairway and the machinery. Whether chapter 288, Laws 1911, is for the benefit of any but employees is not decided.

**Proximate cause of death question for jury.**

2. The evidence did not leave the cause of death a matter of speculation or conjecture, but was sufficient to justify submitting to the jury the question whether defendant's negligence was the proximate cause of the death.

**Contributory negligence — assumption of risk.**

3. It did not conclusively appear that plaintiff's intestate was guilty of contributory negligence or that he assumed the risk.

**Cumulative evidence — photograph.**

4. It is within the discretion of a trial court to limit the undue introduction of cumulative evidence, but in this case it is *held* that certain photographs were not properly excluded on this ground, or upon the ground that they would not assist the jury. When a competent witness testifies that a photograph is a correct representation of the objects it purports to portray, it is not for the court to decide either that the witness is unworthy of belief, or that the photograph is misleading. In such case it is error for the court to exclude the photograph as misleading.

Action in the district court for Hennepin county by the administratrix of the estate of Lorne Mitton, deceased, to recover $7,500 for the death of her intestate. The answer admitted that there was no guard or rail on the left-hand side of the stairs leading down to defendant's engine room and no fence or guard around the fly wheels therein; it further alleged that the intestate was well acquainted with the engine house and the position of the stairs and engine, and that when he went there he went at his own risk and assumed the risk thereof. The case was tried before Dickinson, J., who when plaintiff rested granted defendant's motion to dismiss. From an order deny-

of statutory duty as to guards about machinery is treated in a note in 9 L.R.A. (N.S.) 381.

As to what is comprehended in expression "machinery of every description," in statutes imposing duty on master as to placing guards, see note in 30 L.R.A. (N.S.) 36. And for common practice as the measure of master's duty to guard machinery, see note in 16 L.R.A.(N.S.) 140.

ing her motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*O'Brien, Young & Stone,* for appellant.

*Harris Richardson* and *Walter Richardson,* for respondent.

BUNN, J.

This action was brought by the administratrix of the estate of Lorne Mitton, her deceased husband, to recover damages for his death, alleged to have been caused by the negligence of defendant. At the close of the plaintiff's case, the action was dismissed. Plaintiff appeals from an order denying a new trial.

The chief question involved is whether or not the trial court erred in dismissing the action. The theory upon which the trial court acted, and the position of respondent on this appeal, is that no causal connection was shown between the negligence of defendant and the death of plaintiff's intestate, that the evidence left the cause of death a matter of conjecture.

The following facts appeared from the evidence as it stood when plaintiff rested: Defendant owns and operates a grain elevator at Brown's Valley. Across a driveway from the elevator was the office, and the engine room. This engine room adjoined the office on the west, the only entrance being through the office. The floor of the office was on a level with the driveway, while the floor of the engine room was 6 feet below. Access to the engine room was from the office down a steep stairway. The engine room was 8 feet in length by 7 feet 6 inches in width. The stairway consisted of eight steps, each 2 feet 3 inches long, and 6 inches wide, set into 2x6 side runners. It was against the engine room wall on its north or right side, while on the other side there was no rail or other guard. In descending the vertical distance of six feet, it covered a lateral distance of 3 feet 9 inches. A gasolene engine stood on a seven-inch concrete base on the floor of the room. Its length, including the cylinder, cranks, gearing and fly wheels, was substantially 5 feet. The cylinder was at the north end, and at its nearest point a little over a foot from the center of the bottom step of the stairway. Its top was two feet and a half above the floor. The cranks, gearing and flywheels were at the

south end. The flywheels were 18 inches apart, and were hung on the crank shaft just outside of the engine frame. Each was 41 inches in diameter. The north edge of the left hand or east flywheel was 8 inches from the bottom step of the stairway. Midway between the two flywheels was the crank and the connecting rod bearing, while just outside of the crank was a series of cog-wheels. There was no hood or other guard.

Immediately to the left of the stairway and close to the west wall of the room was a small stove. Further to the left was a water-tank which contained water for cooling the engine, and was 7 feet 6 inches in height, 2 feet 6 inches in diameter. A half inch (interior diameter) iron pipe led from the top of the cylinder to the top of this water-tank. This pipe carried the heated water from the cylinder jacket back to the tank. It was connected with the middle of the top of the cylinder, rose vertically a distance of 4 feet, then turned at right angles and ran to the top of the cooling tank, to which it was connected by a short length of rubber hose.

Lorne Mitton was not an employee of defendant. He was a friend of defendant's superintendent in charge of the elevator. On the afternoon of September 19, 1911, he came into the yard of the superintendent's residence, close to the elevator, and had some conversation with the latter, who asked him to "shut down the engine" which was running. Mitton thereupon proceeded to the office and engine room. A few moments later, the superintendent heard the engine make a peculiar noise, and heard Mitton "holler." He rushed into the engine room and found Mitton caught in the flywheels at the south end. He was standing between the two flywheels in an upright position, facing toward the south wall of the room. His right foot was against the cement base, and his left foot was caught in the right hand flywheel, the one farthest from the stairway. He was extricated, and carried up stairs. The injuries received caused his death four days later.

The electric switch used in starting and stopping the engine was in a cupboard in the southwest corner of the room, at a convenient distance from the floor. To reach it from the stairway it was necessary to go around the north end of the engine, and along a

passageway between the engine and the west wall, to the cupboard. Using the switch was the only practicable way of stopping the engine. It appeared that Mitton was more or less familiar with the engine room, and knew where the switch was and how to reach it. When the superintendent discovered Mitton caught in the flywheel, the iron pipe leading from the cylinder jacket to the water-tank was found torn down, twisted and broken, a part of it had been carried in a direction away from the stairway, and a piece had been dragged into the right-hand flywheel, and had become wrapped around the crankshaft just inside of this flywheel. The electric wires connecting the engine and the switch for part of the distance ran along the iron pipe, and were torn down with it, thus making it impossible to say whether Mitton had turned the switch before he was caught.

1. That there was evidence of negligence on the part of defendant sufficient to take the case to the jury on that issue, there can be no doubt, and it is hardly contended to the contrary. The absence of a railing on the left side of the steep and dangerous stairway, the location of the engine in such close proximity to the stairs and the failure to fence or guard the flywheels, would justify a finding that defendant had failed in the performance of its legal duty to its servants and to those who might be called upon to enter the small engine room.

It is urged by plaintiff that Mitton, though not an employee of defendant, was entitled to the benefit of chapter 288, p. 403, Laws 1911, relating to the guarding of machinery in factories, mills, workshops and buildings where persons are employed. We are asked to hold that this act includes all persons lawfully upon the premises, as well as employees. It is quite unnecessary to decide this question here, as there was clearly a common-law liability, there being no question but that Mitton went into the engine room at the request of defendant, and to perform a service for it.

2. Was it a question for the jury whether defendant's negligence was the proximate cause of Mitton's death? The solution of this problem must be reached by applying the law to the facts of the particular case. It is axiomatic that there must be proof of causal connection between the negligence and the accident. This proof may be direct or circumstantial, but it must be "something more than

consistent with the plaintiff's theory of how the accident occurred." Rogers v. Minneapolis & St. Louis Ry. Co. 99 Minn. 34, 108 N. W. 868. "It is necessary that some circumstances be shown which establish, not only that the accident may have happened from the cause alleged, but which indicate, to some extent at least, that such was the cause." Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263.

That the accident here may have been caused by the failure of defendant to have a railing on the side of the stairway, or by its failure to have a hood over the flywheels, or some other guard, is apparent. The stairway was steep, and the steps but 6 inches wide; the light in the engine room was from one window in the north wall; it is not improbable that Mitton slipped or stumbled as he was descending the stairs and that, because of the absence of a railing, he fell over the cylinder and was caught in the flywheel. If the evidence would justify a finding that the accident happened in this way the case should have gone to the jury. The physical facts are persuasive, if not conclusive, that Mitton did not complete his descent of the stairway and walk in the pathway along the north and west walls to the switch. Had he done so, the accident could hardly have happened; certainly the iron water-pipe leading from the cylinder to the tank would not have been thrown down and broken. It may therefore be fairly assumed that Mitton reached the position he was in when found either by falling from the steps upon and across the engine, or by stepping upon the cylinder in an attempt to reach the switch, slipping and taking hold of the pipe to steady himself. The evidence fairly negatives any other cause than these two.

That Mitton would have been guilty of gross negligence if he attempted to get to the switch by stepping upon the cylinder, and either reaching from there or taking farther steps across the engine and in the midst of the revolving fly- and cog-wheels, is beyond doubt. Indeed it is the contention of defendant. It involved but a few steps to enable him to turn off the engine in safety. The facts are not entirely consistent with this theory of how the accident happened, and when we apply the strong presumption that exists against contribu-

tory negligence when the person charged with it is dead, the probability that the accident happened in this way becomes still less.

After a careful consideration of the evidence, we are not able to agree that the cause of the accident was a matter of conjecture or speculation, and hold that it should have been left to the jury to say whether defendant's negligence was the proximate cause of Mitton's death. Plaintiff was not required to prove causal connection by direct evidence. If the circumstantial evidence was "something more than consistent" with plaintiff's theory, if it furnished a reasonable basis for the inference by the jury of the ultimate fact that the alleged negligence was the cause of the injury complained of, it is sufficient proof of the causal connection to sustain a verdict. Plaintiff was not bound to negative all possible circumstances which would excuse the defendant. Where a cause is shown that might produce a given accident, and the fact appears that an accident of that particular character did occur, it may be a warrantable inference, in absence of a showing of other causes, that the one known was the operative agency in bringing about the result. Orth v. St. Paul, M. & M. Ry. Co. 47 Minn. 384, 50 N. W. 363; Lillstorm v. Northern Pacific R. Co. 53 Minn. 464, 55 N. W. 624, 20 L.R.A. 587; Olson v. Great Northern Ry. Co. 68 Minn. 155, 71 N. W. 5; Rase v. Minneapolis St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A.(N.S.) 138; Moores v. Northern Pac. Ry. Co. 108 Minn 100, 121 N. W. 392; Demerce v. Minneapolis, St. P. & S. S. M. Ry. Co. 122 Minn. 171, 142 N. W. 145; Murphy v. Twin City Taxicab Co. 122 Minn. 363, 142 N. W. 716. These cases were referred to not so much as authority for the legal principles stated, but as furnishing illustrations of instances where circumstantial evidence, no more persuasive than in the case at bar, was held to justify an inference that the accident was proximately caused by the negligence proven.

3. It is apparent from what we have already said that it did not conclusively appear that Mitton was guilty of contributory negligence, or that he assumed the risk. There is no serious claim that these questions were not for the jury.

Our conclusion is that it was error to dismiss the case.

4. The trial court excluded photographs of the interior of the engine room. We are asked to determine the correctness of this ruling with reference to another trial. About all the photographs show is the stairway, the stove, and one of the flywheels, which appeared greatly exaggerated in size. The trial court characterized the photograph that showed the flywheel thus exaggerated in size, as a monstrosity, and excluded both photographs. It is probable that the reason for the court's ruling was that it considered the photographs misleading, though the objection covered also the ground that a diagram of the engine room and steps was already in evidence, thus making the photographs unnecessary, or merely cumulative evidence. It is within the discretion of the court to restrict the undue introduction of evidence that is merely cumulative, whether it be the testimony of witnesses, or demonstrative evidence. But the photographs offered, leaving aside for the moment the question of their being misleading, showed the stairway in a way that no diagram could, and tended to explain and illustrate the testimony of the witnesses much more clearly than did the diagram. We are unable to say that their exclusion was justified on the ground that there was no necessity for their being before the jury.

Was it for the court to say that the photographs were not true representations, or that they were misleading? The photographer was called as a witness and testified that the photographs were correct representations, after making due allowance for the enlargement of objects close to the lens. We think that it was for the jury and not for the court to say whether the photographs lied, just as it was for the jury and not for the court to decide upon the credibility of any witness. We concur in the statement made by Professor Wigmore on the subject. 1 Wigmore, Evidence, § 792.

Order reversed and new trial granted.