## JAMES LEWIS v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

February 6, 1914.

Nos. 18,385—(246).

**Verdict not sustained by evidence.**

Evidence in an action by a railroad brakeman to recover damages for injuries received from being caught between the engine-tender and the end of certain poles projecting from a car which he had just uncoupled, or was uncoupling, *held* insufficient to sustain a verdict in his favor, in that thereunder it was merely conjectural whether the accident was due to some movement of the engine, which would have involved liability on defendant's part, or from the settling of the poles or cars, which would not.

Action in the district court for Ramsey county to recover $25,000 for injury received while in the employ of defendant. The answer

1 Reported in 145 N. W. 393.

alleged that whatever injuries plaintiff received were caused by his own negligent failure to exercise proper care for his own safety, and his negligence directly contributed to the accident. It further alleged that plaintiff knew and appreciated whatever dangers or hazards were involved in the situation and assumed the risks of whatever dangers were involved in his employment. The case was tried before Catlin, J., who at the close of plaintiff's testimony denied defendant's motion to dismiss the action, and at the close of all the testimony defendant's motion for a directed verdict in its favor, and a jury which returned a verdict of $8,750 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*Briggs, Thygeson & Everall,* for appellant.
*Barton & Kay,* for respondent.

PHILIP E. BROWN, J.

Defendant appeals from an order denying its alternative motion for judgment or new trial, after verdict for plaintiff returned in an action to recover damages for personal injuries.

There is little dispute on the facts, and none as to the following: On November 26, 1912, and previously, plaintiff was a freight brakeman in defendant's employment, his run being between Austin and Hayfield, in this state. A flat car loaded with poles had remained on defendant's side track in Austin for several days prior to the date stated. Its load had shifted forward, so that some of the poles projected over one end. Plaintiff was familiar with this car and the condition of its load. In the evening of the day mentioned, pursuant to his duties, he coupled the car into a train, next to the engine. In order to do this, and to connect the airhose, he had to get under the ends of the poles. Later the train, including this car in the position stated, was moved out, plaintiff accompanying it, and arrived at Mayville, the next station, about 10 o'clock p. m., the night being very dark. When the train arrived there, two cars were standing on the side track. Pursuant to orders, plaintiff cut out the pole-car from the train by uncoupling and disconnecting the air at the rear

end. The engine and car then moved forward, plaintiff accompanying them, and backed slowly in on the siding, until the car came in contact with the forward car already there. Plaintiff gave the engineer a stop signal, who thereupon applied the air and brought the engine and car to a stop, and plaintiff, for the purpose of leaving the car on the siding, stepped in between it and the tender, turned the angle-cocks, and disconnected the air; whereupon his head was caught between the tender and projecting poles, thus occasioning the injuries complained of.

1. The complaint charged negligence in the condition of the poles, and also that defendant moved the engine and car, shoving them closer together, while plaintiff was in the position stated, thus causing the accident; but the court submitted the latter ground only. The sufficiency of the evidence to sustain the verdict being challenged, a somewhat fuller statement thereof relating to the occurrence is necessitated.

The side-track was level at the place of the accident. The engine and car were equipped with air-brakes, and to accomplish the switching movement the engineer started the engine in backward motion, then shut off the steam and "drifted in," using the air for control; the speed, when backing, being three or four miles an hour, and there being but slight jar when the cars came together. The stop was made by applying the air brakes on engine and car, the engine remaining set for further backward movement, wherefore if any motion thereafter occurred it would have been towards the car. The effect of the setting of the brakes, however, was to hold the engine and car steady and leave them standing where they stopped, and the engineer contemplated that the next movement after detaching the car would be forward. An invariable rule required the setting of brakes on cars left on sidings. At the time of the accident, the rear brakeman was near the rear end of the car, but was not called as a witness. Plaintiff testified, at folio 47 of the paper book, that the train movement coupled the car to the other two, and there was no testimony to the contrary. No witness testified to seeing the accident, or to any movement of the engine, cars, or poles after the stop. It seems probable that plaintiff's injury could have resulted from either, and all other

causes are apparently eliminated. Plaintiff's case rests upon the theory that the engine moved, and claims such was established by the circumstances disclosed; while defendant argues to the contrary, claiming also that the accident probably resulted from a slack movement of the cars occurring after plaintiff went between the car and tender, or else from some shifting of the poles, or, in any event, that the cause was left to mere conjecture. The engineer testified positively that the engine remained stationary after the stop. Plaintiff's version in this connection was that "by some unknown movement" his head was caught between a pole and the back of the tank, thus held from 15 to 20 seconds, and then released; doubtless meaning, by the expression quoted, nothing more than that he did not know the cause. Aside from medical experts, these two were the only witnesses sworn.

The applicable law has frequently been declared by this court, as follows: Causal connection between the negligence claimed and the injury need not be proved by direct evidence, but the proofs must be something more than merely consistent with plaintiff's theory of how the accident occurred. "If the circumstantial evidence in any case furnishes a reasonable basis for the inference by the jury of the ultimate fact that the alleged negligence was the cause of the injury complained of, it is sufficient proof of a causal connection to support the verdict;" while, on the other hand, if the question of negligence in the premises is left conjectural, no recovery can be had. Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392; Healy v. Hoy, 115 Minn. 321, 132 N. W. 208; La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Murphy v. Twin City Taxicab Co. 122 Minn. 363, 142 N. W. 716. And the latter result likewise follows where more than one possible cause is shown, any one of which might have produced the harm, but there are no circumstances pointing to the one which would involve liability on defendant's part. as the probable cause, more than to the other or others which would not. Owens v. Chicago Great Western R. Co. 113 Minn. 49, 52, 128 N. W. 1011. The question then, is: Does the evidence, direct and circumstantial, furnish a reasonable basis for the deduction that a movement of the locomotive caused the injury? Several considerations preclude an affirmative answer, the initial one lying in the

positive and uncontradicted testimony of the engineer, which, not being so inconsistent with the facts and circumstances disclosed or otherwise so inherently improbable as to impeach or discredit the witness, cannot arbitrarily be disregarded. Campbell v. Canadian Northern Ry. Co. supra, page 245, 144 N. W. 772, and cases there cited. The only inconsistency, if such it may be called, disclosed in his testimony lies in his statement that the cars were coupled in the switching movement, and his subsequent admission that from his position and on account of the darkness he could not have known such to be the fact. However, plaintiff himself so testified, evidently not from observation, but because this was the usual result of like movements. The engineer's truthfulness, moreover, is reinforced by the fact that any backward movement of the locomotive, without a signal from plaintiff, would have been dangerous, and likewise unlikely because purposeless. Plaintiff admits that the engineer "must have released his brakes and applied steam in backward motion in order to have brought about the motion which caused his injury," but contends he "may have intended to move forward, either of his own volition or by virtue of a signal from one of the other members of the crew, and, forgetting the machinery of his engine still stood in backward motion, he opened the throttle and the engine started backward, and he immediately shut it off, but enough movement had taken place to do the damage." There is no evidence of such a happening, or of any signal, but a presumption from defendant's failure to call plaintiff's fellow brakeman as a witness is invoked in its support. In short, an unsupported possibility is advanced in aid of verdict, on the theory that the witness, if called, would have so testified. It does not appear, however, that he observed how the engine was handled or could have seen, in the darkness, had he looked, nor that he knew of any fact likely to throw light on the question involved. Omissions to call witnesses are often circumstances proper for consideration in weighing the. evidence introduced; but cannot be substituted for affirmative proof.

Other matters must also be taken into account; in which connection it may be suggested that if plaintiff's theory be correct, and if, as he claims, no yielding of the car-couplers occurred after the impact while

the cars were "settling" it is difficult to understand how his head became released. Our conclusion is that the verdict is unsupported; and also that, from the whole record, the evidence and probabilities point at least in the same degree to the "settling" of the cars or poles being the cause of plaintiff's injury as to plaintiff's hypothesis. The case does not, however, warrant judgment for defendant.

Order reversed and new trial granted.