## EDWARD FITZGERALD v. ARMOUR & COMPANY and Another.[1]

### March 12, 1915.

### Nos. 19,081—(275).

**Injury to servant — cause of death.**

1. Deceased was operating an uncaged freight elevator. The elevator was ascending and after it passed the second floor the body of deceased was seen falling down the shaft. When found in the basement life was extinct. On the wall of the shaft just below the second floor and near the station of the operator was a six-inch projection into the shaft. The cap of the deceased and hair like his were found caught upon this projection. *Held*, the facts warranted the inference that the projection in the shaft was the cause of the death of deceased.

**Evidence of negligence.**

2. The evidence is sufficient to sustain a finding that it was negligence to permit this projection in the elevator shaft.

[1] Reported in 151 N. W. 539.

---

Note.—As to the servant's assumption of risk of dangers imperfectly appreciated, see note in 4 L.R.A.(N.S.) 990. And on the servant's assumption of risk from latent danger or defect; see note in 17 L.R.A.(N.S.) 76.

**Assumption of risk.**

   3. The evidence is not conclusive that deceased assumed the risk of this condition. He was a boy of 17. He had frequently used the elevator during six weeks, but it does not appear how often he had gone up as far as the second floor. The elevator shaft was enclosed on two sides and partly on the third. There is no evidence as to light conditions. There is no evidence that deceased had knowledge of the projection, and the proof is not conclusive that it was so obvious to him that he must be deemed to have known of it.

**Contributory negligence.**

   4. Contributory negligence was not conclusively proven.

Action in the district court for Ramsey county by the administrator of the estate of Hugh J. Fitzgerald, deceased, to recover $3,000 for the death of his intestate. The case was tried before Olin B. Lewis, J., who dismissed the case as to defendant Peterson, and a jury which returned a verdict for $1,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant company appealed. Affirmed.

*Mercer, Swan & Stinchfield,* for appellant.

*T. D. Sheehan,* for respondent.

HALLAM, J.

Hugh J. Fitzgerald, a boy 17 years old, met his death while in the employ of defendant Armour & Co. and while operating a freight elevator. The building in which he was employed was a wooden structure with two and one-half stories and a basement. Deceased was employed in the basement under the direction of defendant Peterson. On the day in question Peterson directed him to go to the first floor to get some pails. Deceased took the elevator and went to the first floor, loaded the pails into the elevator and boarded the elevator himself. For some reason he then proceeded upward. Just why he went up instead of down does not appear, but it is probably not important. After the elevator passed the second floor, the body of deceased was seen falling down the elevator shaft. There is no direct evidence as to when death occurred, but when the body was found in the basement life was extinct. No case was made out

as to defendant Peterson, and the case was dismissed as to him. The jury returned a verdict against the defendant Armour & Co.

Plaintiff's contention is that deceased met his death by reason of coming into contact with a projection in the elevator shaft, and that the permission of this projection was negligence. Defendant denies that the projection in the shaft caused his death, denies negligence, and alleges the defenses of contributory negligence and assumption of risk.

1. First, as to the cause of the accident: No person saw deceased from the time he left the basement until his body was seen falling down the elevator shaft. The evidence as to the cause of the accident was therefore wholly circumstantial. But it was not necessary that the cause of the accident be proven by direct evidence. The essential thing is that the proof, whether direct or circumstantial, must establish causal connection between the condition complained of and the death of deceased. In this case there is little controversy as to the physical facts. The controversy is as to the inferences to be drawn from those facts. "What inferences are to be drawn from the facts in evidence is, within reasonable limits, a question for the jury." Thompson, Trials, § 1039. Whether this or that condition caused the accident is a question that cannot be determined as a matter of law by the court, if, upon the facts proven, fair-minded men of ordinary intelligence may differ as to what inferences may properly be drawn. Abbett v. Chicago, M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266. It was not necessary for plaintiff to show exactly how this injury was received. It was sufficient to show that it was caused in some manner by this projection in the elevator shaft. The proof must furnish more than a basis for speculation or conjecture. It must do more than show a possibility of injury from the condition complained of. It must establish a reasonable probability that the alleged cause produced the effect; that is, it must furnish a reasonable basis for the inference that the condition complained of was the cause of the accident. Lillstrom v. Northern Pacific R. Co. 53 Minn. 464, 55 N. W. 624, 20 L.R.A. 587; Rogers v. Minneapolis & St. Louis Ry. Co. 99 Minn. 34, 108 N. W. 868; La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134

N. W. 313; Mitton v. Cargill Ele. Co. 124 Minn. 65, 144 N. W. 434; Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 145 N. W. 393. Coming now to the facts in the case:

The elevator itself was unenclosed on all sides. There was no elevator cage. The elevator shaft was enclosed on the east and west sides. On the north side the upper half only of the shaft between the first and second floors was enclosed. At the point where this enclosure, that is, the north wall of the shaft, commenced, it was set back more than seven inches from the line of the elevator floor. At a point about two and one-half feet below the second floor this north wall projected at right angles into the shaft for about six inches and came to within a little over an inch of the line of the elevator floor. The post of the elevator operator was in the northwest corner of the elevator. Access to the floor was from the north side. The theory of the plaintiff is that as the elevator ascended deceased must have leaned slightly beyond the line of the elevator floor so that he came into contact with this projection, and that he must have received a blow which threw him to the floor of the car; that as the elevator in its upward course reached the second floor the body must have fallen out upon the floor, and then down the shaft as the elevator passed the floor and left the shaft open. The floor opening was equipped with automatic gates which opened and closed as the elevator approached and passed the floor, and which would permit a body to fall in this manner. Color is given to plaintiff's theory by the fact that the cap worn by the deceased was found upon the surface of this projection a few inches below the level of the second floor. There is evidence that the cap was caught and held on the under side of the slightly projecting head of a nail, and that some hair was found there which was "just exactly like the hair of the deceased." This position of the cap well sustains the claim that the head of deceased must have come into contact with the projection in the elevator shaft, and we think the evidence sufficient to warrant the inference that the projection in the elevator shaft was the cause of the death of deceased.

2. The next question is, was it negligence on the part of defendant to construct and maintain this elevator shaft in such manner

that the upper part of the wall of the shaft projected for six inches at right angles into the shaft. Such a projection is manifestly fraught with some danger to one not familiar with the construction of the shaft. The operator stood very close to this side of the elevator when operating it. The swerving of the head or body two inches over the side of the open elevator floor at the moment of approaching this projection meant contact with a solid beam. It is in evidence that this method of construction is common in case of buildings of wood construction. It further appears, however, that it is practicable to avoid danger by beveling the projection so as to make the construction of the shaft slanting instead of at right angles, that this precaution is frequently taken, and sometimes required by public elevator inspectors. The question whether it was negligence to maintain this shaft with an abrupt projection in it was one of fact for the jury.

3. Defendant insists that deceased assumed the risk of injury from operating the elevator with the shaft in this condition. The law relating to assumption of risk is well settled. To establish assumption of risk two things must be made to appear: First, the defect or condition out of which the injury arises must be known to the employee or it must be so obvious that one who owes no duty to inspect is bound to see it; and, second, it must also appear that the employee understood the risk arising from such defect or condition, or in the exercise of the intelligence with which he is gifted he ought to understand it. Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 273, 120 N. W. 360, 21 L.R.A.(N.S.) 138; Dobreff v. St. Paul Gaslight Co. 127 Minn. 286, 149 N. W. 465. The burden of proof is upon the defendant as to both propositions. Upon the first proposition the proof fails of conclusive effect. There is no evidence at all that deceased in fact knew of this projection in the wall of the shaft, nor can it be said that there is proof conclusive that the projection was so obvious that he must be deemed to have known it. Deceased was a boy of 17. He had been in the employ of defendant for about six weeks. During that time he had used this elevator between the basement and the first floor five or six times a day. It

does not appear that he ever had occasion to use the elevator to the second floor. At times he used it between the basement and the second and third "runways," so called, which were on the opposite side and on different levels from the floors. One of these runaway was below the level of the second floor. How often he used the elevator past the second floor does not appear. There is no evidence as to light conditions in the elevator shaft. There may be no presumption that the shaft was dark, but certainly there is no presumption that an elevator shaft, wholly enclosed on two sides and partly enclosed on a third, is light. One of defendant's witnesses who had used this elevator about 15 times a day for six years had no recollection of ever having observed this projection. Clearly there was not conclusive evidence of assumption of risk. The case is entirely unlike Tostason v. Minneapolis Threshing Mach. Co. 113 Minn. 394, 129 N. W. 593, and Johnson v. Northern Pacific Ry. Co. 125 Minn. 29, 145 N. W. 628.

4. Similar conditions force us to hold that contributory negligence was not conclusively proven. The law presumes that deceased was in the exercise of due care. Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752. The evidence is not conclusive that reasonable care on his part would have discovered this projection. Unless chargeable with knowledge of it, there is little on which to predicate a claim of negligence. It is not negligence as a matter of law for the operator of an unenclosed freight elevator, who has no knowledge of obstructions in the shaft, to permit his body to swerve a few inches beyond the line of the elevator floor.

There was no reversible error in permitting defendant Peterson to be called for cross-examination. Bernick v. McClure, 107 Minn. 9, 119 N. W. 247; Leystrom v. City of Ada, 110 Minn. 340, 125 N. W. 507; Allen v. Eneroth, 118 Minn. 476, 137 N. W. 16.

Order affirmed.