ANTON ANDERSON, AS ADMINISTRATOR OF ESTATE OF
JACK LENYK, DECEASED v. MINNEAPOLIS, ST.
PAUL & SAULT STE. MARIE RAILWAY
COMPANY.[1]

No. 23,436.

July 20, 1923.

**Defective motor hand-car proximate cause of death.**

1. In an action under the Federal Employers Liability Act for injuries, resulting in death, alleged to have been caused by the negligence of defendant, the evidence is *held* sufficient to justify the jury in finding that a gasolene motor hand-car furnished to decedent for use in his employment was out of order and unsafe for use, and that such condition of the car was the direct and proximate cause of the injury complained of by the action.

**Reversal of verdict not justified by presence of another element of negligence.**

2. A special verdict so finding the fact sufficiently indicates that the general verdict for plaintiff was founded thereon, and the presence of another element of alleged negligence, though probably not established by the evidence yet submitted to the jury, will not justify a reversal on the theory of the rule applied in Burmister v. P. C. Giguere & Son, 130 Minn. 28.

**Verdict sustained by evidence.**

3. The evidence supports the verdict in all respects, and the record presents no error in the instructions or refusals to instruct the jury.

Action in the district court for Kittson county to recover $25,000 for the death of plaintiff's intestate. The case was tried before Grindeland, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied its motion for a directed verdict, and a jury which returned a verdict for $8,000 and answered in the affirmative the special question mentioned in the fourth paragraph of the opinion. From an order deny-

[1] Reported in 194 N. W. 762.

ing its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.    Affirmed.

*W. E. Rowe, William L. Peterson* and *John E. Palmer,* for appellant.

*Jenswold, Jenswold & Dahle,* for respondent.

BROWN, C. J.

Decedent was in the employ of defendant, an interstate railroad company, as a section hand on a division of its line in Kittson county in charge of one Anderson as section foreman.    The foreman, with the acquiescence of the company, had provided the employes engaged in track repair work a gasolene motor car to convey them to and from their work, which was operated over and upon the railroad track as an ordinary handcar.    The car, as described in the record, is some 6 feet in length, with a floor or platform between the wheels 10 or 12 inches above the ground.    A bench or box extending along one side of the floor, about 15 inches wide, incloses the motive power machinery and serves as a seat for the men riding upon the car; the top of which being about 3 feet above the bed of the track.    The weight of the car is around 1,000 pounds.    On the day in question decedent with the foreman had been out on the line engaged in leveling the track by driving "shims," otherwise described as wooden wedges, between the rails and ties where depressions appeared, thus removing points of unevenness in the track.    They had been up the line a distance of some 5 or 6 miles and were returning at the noon hour, when the car was derailed, resulting in the injury and subsequent death of decedent.    Plaintiff was duly named administrator of his estate and thereafter brought this action under the Federal Employers Liability Act for the benefit of the widow and children. Plaintiff had a verdict and defendant appealed from an order denying its alternative motion for judgment or a new trial.

The assignments of error present as the principal questions urged in support of the appeal:    (1) Whether the evidence is sufficient to sustain the verdict upon the issues of negligence and contributory negligence; and (2) whether there was error in the instructions or refusals to instruct the jury.    Misconduct on the part of counsel for

plaintiff on the trial of the cause is also assigned, but our examination of the record discloses no serious question in that respect, and we pass that feature of the case without further statement or comment.

1. A careful consideration of the record brings to light evidence sufficient to sustain the verdict on the issues of negligence and contributory negligence. It appears that the section foreman was operating the motor car on the particular occasion, being seated in the rear while decedent was seated at the forward end on the elevated box containing the motor. The speed at the time, according to the estimate of the foreman, was around 10 miles an hour. Suddenly and without apparent warning of any kind the car jumped the track, causing decedent to be pitched or thrown forward with great violence, landing on his head between the rails of the track inflicting an injury, a fractured skull, from which he died 2 days later. He was not rendered unconscious, but with the assistance of the foreman, who was unhurt, arose and aided in replacing the car on the track and rode thereon to headquarters. He was taken to the hospital on the following morning, where he died as just stated. Whether the car was running only 10 miles an hour, or much faster, the fact remains that the derailment was sudden and quite violent, as the result to decedent conclusively shows. On the facts disclosed the jury could well have concluded that the car was moving at a much greater speed than that given by the foreman.

The important consideration is whether the derailment was occasioned by reason of the negligence of defendant. And to that we turn our attention. One ground of negligence charged in the complaint and litigated on the trial was that the car was defective and out of order and unsafe for use, to the knowledge of defendant through the foreman. That feature of the case was submitted to the jury in the form of a special verdict in the following language:

"Was the hand-car at the time of the accident in question unsafe for general use for the purpose for which it was intended by reason of having a bent axle or axles?"

The jury answered the question in the affirmative, and to the necessary effect that the car was not in proper or safe condition for

use. The record sustains the finding. The evidence, the verity, force and effect of which were for the jury and trial court, tends to show that the axles of the car wheels were bent and out of alignment, and to such an extent that the wheels wabbled when in motion, necessarily causing to an extent a swaying of the car from side to side as the flanges of the wheels came in contact with the rails by the irregular movement. From that situation, coupled with the excessive speed of the car, a conclusion justified by the evidence, and probable unevenness in some of the rail joints, which the parties were at the time out on the line to repair and overcome, the jury could well conclude that the defect in the axles was the direct and primary cause of the derailment, and chargeable to defendant as an act of negligence for which it is liable. That theory was urged by counsel at the trial and, with others, submitted to the jury. Although the evidence is not specific and positive that such was the cause of the accident, taken as a whole, together with reasonable inferences referred to, proper for the jury to draw from the facts presented, the case is brought within the rule of liability heretofore applied by our decisions. Wallin v. Eastern Minn. Ry. Co. 83 Minn. 149, 86 N. W. 76, 54 L. R. A. 481; Lillstrom v. Northern Pac. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; Olson v. Great North. Ry. Co. 68 Minn. 155, 71 N. W. 155; Crandall v. Chicago G. W. R. Co. 127 Minn. 498, 15 N. W. 165.

The only matter of record to challenge that conclusion is found in the contention of counsel for defendant that the accident was caused by the act of decedent in dropping to sleep and falling from his seat to the track immediately in front of the rapidly moving car. We find no sufficient evidence to sustain that view of the case. The foreman who was driving the car did not, according to his testimony, know how the accident happened, though he thought that decedent must have fallen from the car in his sleep. He did not see him fall, or in what manner he was thrown or taken from the car. His mind and attention at the moment were directed to the motor, and immediately as the car left the track he turned off the gas and set the


brakes and then saw decedent on the ground between the rails; his thoughts as to how decedent came there cannot be given the force of evidence. And, moreover, the physical facts conclusively nega- tive his opinion on the subject. Decedent was seated at the forward end of the car, and, had he fallen to the track while it was in mo- tion, the car would have passed over his body, inflicting serious in- jury to him. The car weighed 1,000 pounds, yet the only injury shown by the evidence was to the head of decedent; no limbs were broken or other injuries or lacerations shown, which naturally would have resulted had he been struck by the heavy car. The sug- gestion of counsel that, as decedent fell to the track, the car hit and bounced him forward, is not in accord with experience in such sit- uations. The physical facts, as shown by the testimony of the fore- man, are that when the accident was all over decedent lay on his back between the rails 6 feet ahead of the car; no part of his body being in contact with it. From that the conclusion seems irresisti- ble that he was thrown forward as the car came to a violent and sud- den stop.

This disposes of the case. The evidence supports the verdict on the issue of the negligence of defendant, and exonerates decedent from the charge of contributory negligence or assumption of risk. The charge of the court taken as a whole was quite full, and fairly and clearly laid the issues before the jury, and the assignments alleging error therein are not sustained, nor was there error in the refusal of any of defendant's requests. It is probable that, had de- cedent been the cause of his own injury by falling asleep on the car, no recovery could be had, and the court should have instructed the jury as requested. We do not decide the point, for the evidence will not warrant that view of the facts.

It sufficiently appears that the jury predicated the general ver- dict upon the special finding, and the rule of practice stated and applied in Burmister v. P. C. Giguere & Son, 130 Minn. 28, 153 N. W. 134, and other like cases has no application. On the theory that the car was defective and unsafe for use the verdict is right, and it is immaterial that it does not affirmatively appear that the prob- ably untenable theory that the "shim" played a part in bringing on

the accident was or was not considered by the jury. The special verdict is conclusive of legal ground and basis for the general verdict, and there the matter must rest.

Order affirmed.

DIBELL, J.

I concur in the result. I do not agree that the special finding is such that we can say that the general verdict was based upon it. It does not determine that the fault or negligence there found was the proximate cause of the injury. Neither does it eliminate the so-called "shim" theory, persistently advanced at the trial, which the opinion suggests is probably untenable. If the shim theory, without justification in the evidence, was submitted as a basis of recovery, or as an essential element through which the negligence specifically found operated, there should be a new trial, for we have no way of knowing that the jury ignored it in reaching its general verdict. The familiar rule announced in Burmister v. P. C. Giguere & Son, 130 Minn. 28, 153 N. W. 134, and other cases, would then apply.

The shim theory is in the complaint, is vitally connected with the charge of negligence, was deemed an important factor throughout the trial, was something much fought over, was referred to in the charge, although not perhaps definitely announced as a distinct ground of negligence, and was argued in the briefs and orally before this court. Throughout, the presence of shims was an important element, both as a ground of negligence, and as an explanation of the cause of the accident.

In my judgment there was enough evidence to go to the jury in support of the plaintiff's claim as to the shims. The witness Lesky, who had worked with the car, testified that shims were carried on the car when they were out shimming, and that he held them to prevent their falling off. The foreman Anderson and Lenvk were shimming on the day of the accident. Anderson testified that no shims were on the car that day. Four witnesses testified that he told them, soon after the accident, that he did not know how it happened unless a shim fell off the car and derailed it. This testimony was

not substantive evidence, but it so impeached Anderson that the jury, if it chose, might disregard his testimony that the car was not carrying shims. After the accident, when Lesky went with Anderson to the place of the accident, he found a broken shim near the rail on the left in the direction the car was moving, and, as we gather it, part outside and part inside the rail. This shim, or some part of it, he gave to Anderson. It is traced no further. He says it had the marks of a car wheel upon it. It was freshly broken. He says that he cannot remember seeing at other times shims lying along the track. Lesky was to some extent impeached by a written statement made before. The credit to be given his testimony was for the jury.

A sensible jury could find that a shim fell from the car and was a proximate cause of the derailment, or at least one of the elements in the chain of causation. The defendant's theory that the decedent fell in front of the car, and derailed it, seems impossible. I agree that the case could be decided as it was, and just as easily, without finding the presence of shims or the tracing of their movements. The defective and unsafe condition of the car, as specifically found by the jury, might have been found, alone or in connection with excessive speed, the cause of the accident, as stated in the main opinion. The jury had both this theory and the shim theory submitted to it. If the shim theory was not supported by evidence justifying its consideration by the jury as an element tending to charge the defendant with liability for the accident, there was error. In my view it was for the jury.

STONE, J. (dissenting.)

I dissent. I fail to find in the record any evidence supporting the "shim" theory, except the testimony impeaching the foreman Anderson. Therefore I agree with the majority that the shim theory must be disregarded. That leaves us as the only possible cause of the derailment the "wabbly" condition of the car, due to the bent axle. But the trouble there is that it does not seem to have occurred to any participant in the trial that the bent axle had anything to do with the derailment, except that it was claimed to have caused the

vibration which shook off the shim that was averred to have caused the derailment.

It is rather an anomalous thing, it seems to me, to sustain a verdict when at the same time we demolish the foundation upon which the jury put it. We cannot say that the result would have been the same, had the shim theory been taken from the jury and the case submitted to them on the theory that the bent axles, without the intervention of the shim, might be found to have been the proximate cause.

I feel that there should be a new trial, and therefore dissent.