STATE, BY HARRY H. PETERSON, ATTORNEY GENERAL,
v. L. A. ANDREWS AND OTHERS.
THORA BRUCE, APPELLANT.[1]

March 21, 1941.

No. 32,693.

[1]Reported in 297 N. W. 848.

*F. L. & E. V. Cliff,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Norbert Willwerscheid* and *Carl O. Wegner,* Special Assistant Attorneys General, for petitioner-respondent.

HOLT, JUSTICE.

In a condemnation proceeding authorized by L. 1935, c. 51, and Ex. Sess. L. 1935-1936, c. 101, the state took appellant's land, described as lots 3 and 4 in section 8, township 120, range 44, Big Stone county, this state. No question is made of the right of the state to appropriate the land, or of the regularity of the proceeding up to the trial in the district court of the appeal from the award of the commissioners filed June 4, 1937. Thora Bruce was the owner of these government lots bounded on the south by the Minnesota River. So bounded, they now contain 365 acres, whereas when originally surveyed and meandered they contained about 64 acres. Both the state and Mrs. Bruce appealed to the district court from the award of $7,738.20 by the commissioners, the state claiming the award excessive and Mrs. Bruce that it was inadequate. The appeals came to trial October 10, 1939. After the jury was selected and sworn the state moved that the court grant

a view of the land. Over the objection of counsel for Mrs. Bruce that the condition of the land had materially changed since the commencement of this proceeding by the flooding thereof by the state, the motion was granted and the land was viewed by the jury. The trial resulted in a verdict of $5,476.05. Mrs. Bruce moved for a new trial, and appeals from the order denying the motion.

The granting of a view of the land by the jury is assigned as error. 2 Mason Minn. St. 1927, § 9296, expressly places it in the judicial discretion of the court to permit the jury to view real property which is the subject of litigation. Settled practice also is to the same effect. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9721. The principal claim is that a large part of the land had been in cultivation and another large part as meadow, but owing to the commencement of this proceeding in the late fall of 1936 there was no attempt to cultivate or make use of the land in 1937 or any time thereafter so that it was overgrown with weeds and unkempt in appearance in the fall of 1939, when the view was had by the jury. There is no claim that the contour of the land was changed, or that any structure in the river below this land had raised the water so as to flood any part, or that it was then flooded. It is claimed that in the spring of 1939 the state had opened the sluice of the dam at the outlet of Big Stone Lake so as to flood the bottom lands of the Minnesota River below. The jury was composed of residents of Big Stone county, and undoubtedly knew that spring flooding does not persist in the Minnesota River in Big Stone county into October, the time of trial. Nor do we think such a jury is liable to be misled by a view under the circumstances.

In August, 1936, Oliver Storlie, the brother of Mrs. Bruce, who during all the time of her ownership of the land has had charge of it for her, took five photographs of portions of the wheat crop raised as it stood in shock. These photographs offered in evidence were excluded upon the state's objection. They were taken with the camera near the center of the land. The testimony was that

the largest area of the land within the range of any of the photographs was about 60 acres—the cultivated land was about 170 acres, of which only 52 were in wheat. There was no proof as to where the camera was placed in the other four photographs, nor as to what acreage is within the range of the picture. While, perhaps, it would have been no abuse of judicial discretion to have admitted these photographs, there certainly was no error justifying a reversal in their exclusion. A crop in shock on a 60-acre patch of a 365-acre farm, even though of one of the best crop years, does not aid the jury materially in fixing the market value of the farm. This brother of plaintiff was permitted to testify that this land, the cultivated part and the meadow, was bottom land and a third more productive than the neighboring upland. He was permitted to testify as to number of bushels raised on the acre of the various crops raised in a good-crop year, and the number of tons of hay an acre on the 145-acre meadow a year; and that the 1936 crop was the second best since 1930. Moreover, the tenant Frank Rudnicke, who farmed the land in 1936, was permitted, without objection, to testify to every bushel threshed not only of wheat but of every other crop seeded that year. And his brother, Leon Rudnicke, the tenant from 1930 to 1935, inclusive, testified to the yield in bushels per acre of every year, including the poor year of 1933, when the whole yield was 300 bushels of oats and 130 of barley, and the year of 1934, when there was no yield at all and the stock in the pastures was turned into the whole farm. There was no attempt to dispute these tenants as to yield. Under the situation of the evidence, it is not possible to see any prejudice to plaintiff in excluding these photographs. Of course a photograph taken by a witness on May 9, 1937, exhibit 6, showing the land under water, was properly excluded. This proceeding was under way. That flood could not have left any trace in October, 1939, when the jury viewed the land.

There was no exception to the charge when given, but Mrs. Bruce now assigns as error that the court failed to give the jury the meaning of reasonable "market value" as defined by law. If

a definition was desired an instruction should have been presented, or at least an exception should have been taken before the jury went out. Moreover, there could be no question that the jury well understood from all the evidence taken that the sole question to be answered by the verdict was the fair price of this land in the condition it was in in June, 1937, when the award of the commis-sioners was filed. The charge of the court presents no ground for a new trial.

Nor can this court say upon this record that the award is in-adequate or contrary to the evidence. Mrs. Bruce's witnesses placed the value as high as $11,934, the state's as low as $3,650. The commissioners placed it higher, some $2,000, than the jury. Of course the commissioners' valuation was not in evidence. The trial court has approved the verdict, and this record does not justify this court in disturbing it.

The motion for a new trial was also based upon the claim that Christ Bakke, a witness for the state, had mistaken lot 3 for lot 3 in section 9, which adjoins lot 4 on the easterly side. It seems that Oliver Storlie in November, 1939, some weeks after the trial, sought out Mr. Bakke at his home and that, after a conversation, it was learned that Bakke had mistaken the tract when on the stand. And he had given his affidavit to that effect in which he states that Oliver Storlie also was interested in lot 3 in section 9, having about the same acreage as lots 3 and 4 in section 8, but that the latter is better land and he valued that at $27, whereas he had placed its value at $12 an acre under the belief it was the land in section 9. There is no intimation that the state in any way was to blame for the witness's mistake or confusion of tracts. It is almost unbelievable that such mistake could have been made by this witness, who had lived within view of the land upwards of 40 years and who sat and heard all the testimony of the other witnesses. Still more remarkable that he should now value these adjoining bottom lands at so greatly differing values, the one more than double the value of the other. But, even so, the question whether this mistake of one witness on the adverse side

should be cause for a new trial rests with the trial court. He saw and heard Mr. Bakke, and with all that transpired in his presence has denied Mrs. Bruce a new trial, because of the mistake of the state's witness. We can see no abuse of judicial discretion in so doing.

The order is affirmed.

LORING, JUSTICE (dissenting).

I think the exclusion of the photographs taken in 1936 near the time of the appropriation of the land by the state was prejudicial error. The court had permitted the jury to view the land in 1939 after it had been abandoned as a farm for two seasons, during one of which it had been flooded by the opening of the sluice gates in the project in connection with which the land was taken. These photographs were competent evidence of the condition of the land as well as of the crop. They were objected to, not because they were merely cumulative, but because in connection with the condition of the cultivated land they showed only one crop. They were not excluded because they were merely cumulative of the oral evidence as to condition and crops but apparently because of the objection of counsel. Being competent evidence on the vital point in the case, their exclusion was prejudicial. It was especially so after the jury had seen the land in its deteriorated condition. Any person whose experience with farms has been practical and not merely theoretical knows what two years' abandonment does to farm land, especially if it has been subjected to flooding. The jury could only receive an unfavorable impression of the farm from its appearance after such a history. It would have been only fair to permit them to see it as it was just before the condemnation.

Mr. Justice Holt's opinion treats the matter of the admission of photographs as if it were discretionary with the trial court. There may have been a time in the early history of photography when such a doctrine was announced by some courts, but I think that that time has long since passed. In Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434, it was held that the exclusion

of competent photographs was prejudicial error, the court adopting the theory announced in 3 Wigmore, Evidence (3 ed.) § 792, in which Dean Wigmore criticizes the doctrine of discretionary admission. He says:

"If a qualified observer is found to say, 'This photograph represents the fact as I saw it', there is no more reason to exclude it than if he had said, 'The following words represent the fact as I saw it', which is always in effect the tenor of a witness' oath. If no witness has thus attached his credit to the photograph, then it should not come in at all, any more than an anonymous letter should be received as testimony. There can be no middle ground between these two consequences. Occasionally a Court is found excluding a photograph as being misleading; but this is a begging of the very question which the jury have to decide; it would be as anomalous as if the judge were to order a witness from the stand because he was believed by the judge to be lying. Perjury cannot be thus determined in advance by the judge,—not more for photographic than for verbal testimony.

"There is a Massachusetts doctrine that the trial Court may in its discretion reject a photograph as being under the circumstances not sufficiently 'instructive'; in other words, the Court rules that cumulative testimony, by superfluously adding a pictured description to a verbal description, is on the facts not needed. Such a rule may be justified as an application of the general principle * * * permitting the rejection of cumulative testimony; but not otherwise."

In the present state of the photographic art, I think it would be extremely unwise for this court to adopt the view that the admission of competent photographs lies in the discretion of the trial court. It is contrary to logic, and it is certainly not in the furtherance of justice. In most cases no amount of word pictures can take the place of the photograph, which more truly than the human eye reveals the actual facts. I think there should be a new trial.

STONE, JUSTICE (concurring in the result).

To me the conclusion seems irresistible that it was error to exclude the photographs, exhibits 1 to 6. Admittedly the first five showed the 1936 crop in shock on about 60 acres. Exhibit 6 showed the land under water.

Such obviously sound rules as those stated by Dean Wigmore, quoted by Mr. Justice Loring, and followed here in Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434, should not be whittled away willfully or by judicial inadvertence in their application. It is no objection on the ground of competence that a photograph is but a partial exhibition of the subject matter of inquiry or that the judge thinks that it is deficient or possibly deceiving. Such considerations go to the weight of the evidence rather than its admissibility. They are for consideration by the jury and beyond the province of the judge.

Nor is it objection to the admissibility of a photograph otherwise competent that it was taken after the "proceeding" or controversy had got "under way." The long settled and unquestioned rule is that the trial judge has no discretion to exclude such obviously competent and normally valuable testimony.

I concur in the result, somewhat reluctantly in view of the obvious error, because it is fairly clear that it was without prejudice. The qualities of the farm land in question as well as its physical characteristics were fully gone into. Its productivity over a considerable period was established without contradiction.

GALLAGHER, CHIEF JUSTICE (concurring).

I agree with the view expressed by Mr. Justice Stone.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.